CITY OF JERSEY CITY, RESPONDENT, v. DEPARTMENT
OF CIVIL SERVICE, STATE OF NEW JERSEY AND
WILLIAM J. TIMNEY, JAMES F. MALONEY, EDWARD
M. MALONE, JOHN J. MEEHAN AND FRANK A. VERGA,
APPELLANTS.

Argued June 11, 1951—Decided June 25, 1951.

510

512

Mr. *Edward A. Markley* argued the cause for the appellants; *Mr. James J. Langan,* on the brief (*Messrs. Markley & Broadhurst,* attorneys).

*Mr. Mortimer Neuman* argued the cause for the respondent (*Mr. John B. Graf*, attorney).

· The opinion of the court was delivered by

BURLING, J. This is an appeal from a judgment of the Appellate Division of the Superior Court reversing a determination of the Civil Service Commission, Department of Civil Service, State of New Jersey. The appeal is addressed to this court under a grant of certification heretofore made by us on petition therefor.

The appellants William J. Timney, James F. Maloney, Edward M. Malone, John J. Meehan, and Frank A. Verga, hereinafter referred to as the defendants, and one Joseph M. Lepis, were formerly employed as legal assistants in the Law Department of the City of Jersey City. Having been dismissed therefrom, these individuals filed separate petitions for reinstatement with the Department of Civil Service of the State of New Jersey. The Civil Service Commission, Department of Civil Service, after a hearing, determined that the dismissals were not effected in accordance with the procedures established by law, set aside the dismissals and ordered that all six be restored to their pay and position, effective as of the date of dismissal. From this action of the Civil Service Commission, the City of Jersey City appealed to the Appellate Division of the Superior Court. The judgment of that court ordered the reversal of the order of the Commission and set the same aside. Thereupon the· defendants petitioned this court for certification (Joseph M. Lepis did not join therein) and we granted that petition. There are certain features of this case which prompt us preliminarily to set forth at greater detail the situation in which the parties hereto are involved, the history of this controversy and a narrative of the municipal action from which it stems.

The Civil Service Act, *P. L.* 1908, *c.* 156, was adopted by Jersey City on November 7, 1911. The commission form of government, under the Walsh Act, was adopted by Jersey City in May, 1913, and on June 20, 1913, the newly created·

board of commissioners adopted a resolution purporting to create a law department, consisting of a corporation counsel, a corporation attorney, an assistant corporation attorney and "such other assistants as may be hereinafter named by this Board." This resolution provided for the qualifications, terms of office and salary of the corporation counsel, corporation attorney and assistant corporation attorney, but failed to make provision for qualifications, salaries or compensation for other assistants. At that time there were in effect two statutes concerning law departments in cities of the first class (in which class Jersey City then stood). The earlier of these acts was *P. L.* 1894, *c.* 258, and the later was *P. L.* 1911, *c.* 175. Both of these acts will be discussed at length hereinafter.

From time to time between the date of the resolution of the board of commissioners of June 20, 1913, and December 28, 1920, that board made appointments of "assistants to the corporation counsel" by resolution, apparently without prior appointment by the corporation counsel (as required by the 1911 act, *supra*). The appointing resolutions fixed no term of office; they provided for annual salaries payable semi-monthly.

On April 5, 1920, there became effective another act of the Legislature entitled "An Act to establish a law department in cities of the first class in this State." *P. L.* 1920, *c.* 65. This act will be discussed at length in a later portion of this opinion.

On or about December 28, 1920, the corporation counsel of Jersey City appointed an assistant corporation attorney; this appointment was confirmed by resolution of the board of commissioners on December 28, 1920. Similar action appointing an "Assistant to the Corporation Counsel" was taken in March, 1921. In May and July, 1921, the corporation counsel, purporting to act under the 1920 statute, *supra*, informed the board of commissioners that he had appointed two assistant corporation counsels and four temporary legal assistants. The board undertook to hold such action

erroneous and by resolution made the appointments itself, at designated salaries ranging (for the "temporary" legal assistants) from $2,500 to $4,500 per annum. From January, 1922, however, appointments in the Law Department of Jersey City were generally made by the corporation counsel and concurred in or ratified and confirmed by the board (although in some instances the board made the appointment). Action so taken by the board was by resolution, wherein it named the individual appointee and stated the salary.

In passing, it is noted that in 1928 the Legislature passed an act amending section 1 of *P. L.* 1920, *c.* 65, *supra,* to permit appointment of an indefinite number of assistant city or corporation counsels (rather than two only, as originally provided). *P. L.* 1928, *c.* 97. This amendatory act has no bearing upon the issues involved in this appeal.

We now come to the appointments of the defendants who have appealed. Defendant Timney was appointed legal assistant by the corporation counsel at a salary of $4,100 effective February 1, 1936; this appointment was "approved and confirmed" by resolution of the board of commissioners on February 4, 1936. Defendant Maloney was similarly appointed at a salary of $4,000, subject to payroll deductions then in effect, from July 1, 1937, and his appointment approved and confirmed by resolution of the board on July 6, 1937. Defendant Malone, who appears to have resigned as "Utilityman" in the law department, was appointed by the corporation counsel as assistant corporation counsel at an annual salary of $4,000, effective December 1, 1938; the board, by resolution on December 6, 1938, "approved and confirmed" his appointment as "Legal Assistant in the Law Department" from December 1, 1938, at an annual salary of $4,000, subject to payroll deductions then in effect. Defendant Meehan was appointed legal assistant by the acting corporation counsel at $4,000 per annum effective November 15, 1940; "approved and confirmed" by resolution of the board of November 19, 1940. He resigned the position on

July 19, 1943, but was again appointed as legal assistant, by the corporation counsel, at a salary of $5,000 per annum effective December 19, 1944, "approved" by resolution of the board on December 19, 1944. Defendant Verga was appointed by the corporation counsel as legal assistant at an annual salary of $4,000 effective December 1, 1946; "approved and confirmed" by resolution of the board on or about December 2, 1946. Various salary increases for the majority of the defendants appear to have been authorized from time to time by the board after August, 1944, by resolution following recommendations by the corporation counsel or department heads. There appears to have been no ordinance adopted by Jersey City creating any offices or positions in the law department, or fixing salaries or terms of office of officers and employees therein up to and including the date of the dismissal of the defendants.

Defendant Timney, while still a legal assistant, had been assigned to the Department of Public Safety; he was later assigned under the Department of Public Safety to the First Criminal Court of Jersey City. Thereafter, under *P. L.* 1948, *c.* 264, as amended by *P. L.* 1948, *c.* 394, Jersey City adopted an ordinance establishing a municipal court, effective January 1, 1949. By resolution on December 27 or 28, 1948, by virtue of section 23 of *P. L.* 1948, *c.* 264 (authorizing the governing body of a municipality by resolution to designate any officer or employee of the municipality to serve as clerk of the municipal court) the board of commissioners designated Timney, recited as being "now employed as Legal Assistant to the Corporation Counsel of Jersey City" to "serve as Clerk of the Municipal Court of Jersey City, Part I," and to "serve as Chief Clerk of all the parts of the Municipal Court of Jersey City" with a salary of $7,500 per annum effective January 1, 1949. By resolution of the board of August 16, 1949, this designation was "discontinued and terminated," salary increases previously granted him were rescinded and he was "returned to the position of legal assistant" at a salary of $4,100 per annum.

On or about August 16, 1949, the corporation counsel dismissed the defendants from their positions as legal assistants in the law department of Jersey City, effective August 20, 1949. The board of commissioners, by separate resolutions, on September 6, 1949, "ratified and confirmed" each dismissal. It was to set aside these dismissals that the defendants instituted proceedings for review in the Department of Civil Service of this State. The proceedings resulted in an order in their favor, reversed on the city's appeal by a judgment of the Appellate Division, which latter judgment has been certified to us following the grant of defendants' petition therefor, as hereinbefore recited.

There are five questions involved on this appeal: (a) whether an ordinance was necessary to create and to fix the salary of the position of legal assistant in the law department of a city of the first class in this State; (b) whether in the case of defendant Timney a salary ordinance was necessary in view of *P. L.* 1936, *c.* 6; (c) whether defendant Timney is entitled to restoration to his additional post of clerk of the municipal court, Part I, and chief clerk of all parts of the municipal court; (d) whether defendants Meehan and Verga, honorably discharged war veterans, could be removed from their positions as legal assistants except for good cause shown after a fair and impartial hearing; and (e) whether the dismissals should be set aside as having been effected for political reasons. We shall consider these questions in what we deem to be the order of their importance.

I

IS AN ORDINANCE NECESSARY TO CREATE AND TO FIX THE SALARY OF THE POSITION OF LEGAL ASSISTANT IN A CITY OF THE FIRST CLASS IN THIS STATE?

*A—The legislation relating to law departments in cities of the first class.*

It is admitted by the defendants here, and was conceded by them before the Appellate Division, that *P. L.* 1920, *c.*

65 *supra* (now, as amended by *P. L.* 1928, *c.* 97 *supra,* incorporated in the *Revised Statutes* of 1937 as *R. S.* 40 :171–112, 113 and 114) controls the legality of appointments made after April 5, 1920, the effective date of that act. However, defendants assert here, and argued below, that the appointing power to be exercised under the 1920 act is that set forth in *L.* 1911, *c.* 175, *supra* (now incorporated in the *Revised Statutes of* 1937 as *R. S.* 40 :171–115 and 116) and therefore both acts must be construed together. This argument requires us to consider the effect of *P. L.* 1894, *c.* 258 *supra,* as well as the above mentioned acts of 1911 and 1920, as we shall indicate.

*P. L.* 1894, *c.* 258, *supra,* was entitled "An Act to establish a law department in cities of the first class in this State, to provide for the appointment and duties of the law officers therein, and for their compensation and terms of office." In paragraph 1 thereof it provided that "in each city of the first class in this State *there shall be* a law department" consisting of one corporation counsel, one city or corporation attorney and one assistant city or corporation attorney. It required the appointment of these officials by the mayor on a certain date, fixed a two-year term of office, stated duties in detail, abolished existing legal posts and fixed salaries. *P. L.* 1900, *c.* 33, amending the 1894 act, merely established new salaries for the named officials. A law department appears to have been created in Jersey City under the 1894 act. However, there was no provision therein for any post of "legal assistant."

*P. L.* 1911, *c.* 175, *supra,* was entitled "An Act relating to law departments in cities of the first class in this State, providing for the compensation of certain of the law officers thereof and for assistants therein." Although not in express words a supplement to or amendment of the 1894 act, *supra,* this statute effectively so operated. In section 1 of the 1911 act the Legislature provided that the common council or body having control of the finances of the city "may by resolution" fix the salaries and compensation to be paid to

the city or corporation counsel, the city or corporation attorney and the assistant city or corporation attorney, provided that once the salary or compensation of any such officer was so fixed it could not be increased or diminished during his term of office and that until so fixed the salary or compensation "shall be and remain as now fixed by law." Notably there was no grant of power in the 1911 act to the city government to establish a law department, nor to create the offices of corporation counsel, city or corporation attorney or assistant city or corporation attorney, nor to provide for the appointment of those officers. However, in section 2 of the 1911 act, *supra,* it was provided *inter alia*:

"The common council or other board or body having control of the finances of any such city may provide, from time to time, by resolution, for an additional assistant or additional assistants to the city or corporation counsel, who shall be attorneys at law of good standing, shall be appointed by the city or corporation counsel, and shall perform such work and discharge such duties as shall be assigned to him. *The ordinances providing for such assistant or assistants shall fix the terms of office and the salaries or compensation to be paid.* Such assistants shall not be required to pass an examination as to fitness, and may be removed by the city or corporation counsel at any time without cause assigned, but appointment by the city or corporation counsel to fill any vacancy caused by such removal, or otherwise, shall be for the remainder of the unexpired term only." (Emphasis supplied.)

Section 3 of the 1911 act provided that all "acts or parts of acts inconsistent with this act be and the same are hereby repealed." .

■■ The 1911 act evinces a legislative intent to permit a first class city by resolution to change the salaries of the existing officials of the law department (created by the 1894 act) ; by ordinance to create new positions for assistants to the corporation counsel and in such ordinance to fix the terms of office and the salaries or compensation to be paid such assistants (although permitting their removal by the corporation counsel without cause assigned) ; and by resolution to provide for, *i. e.,* to permit an increase or decrease in numbers of such additional assistants, to be appointed by .

the city or corporation counsel. To hold otherwise is to strike the word "ordinances" out of the statute. This would be contrary to one of the cardinal rules of statutory construction, *viz.*, that statutes are to be so construed that, if possible, full force and effect shall be given to every sentence, clause and word thereof. *Bogert v. Hackensack Water Co.*, 101 *N. J. L.* 518, 520 (*E. & A.* 1925); 2 *Sutherland Statutory Construction* (*3d ed.*), *sec.* 4705, *p.* 339.

*P. L.* 1920, *c.* 65, *supra*, was entitled "An Act to establish a law department in cities of the first class in this State." Section 1 of this act provided:

"In each city of the first class in this State *there shall be established a law department*, which shall consist of a city or corporation counsel, appointed by the governing body of such city, a private secretary, appointed by the city or corporation counsel, and two assistant city or corporation counsels, and as many legal assistants, clerks and other employees as the city or corporation counsel, with the consent of the governing body, shall appoint. Such assistant city or corporation counsels and private secretary shall be removable at the pleasure of the city or corporation counsel, but the legal assistants, clerks and other employees shall be deemed to be within purview of an act entitled 'An act regulating the employment, tenure and discharge of certain officers and employees of this State, and of the various counties and municipalities thereof, and providing for a Civil Service Commission, and defining its powers and duties,' approved April tenth, one thousand nine hundred and eight, and the acts supplementary thereto and amendatory thereof, and shall not be removed except as in said act provided." (Emphasis supplied.)

Section 2 of the 1920 act described the office and duties of the city or corporation counsel and provided that the other members of the law department shall perform such duties therein "as may from time to time be assigned to them by the city or corporation counsel"; section 3 provided that the offices of city or corporation attorney and assistant city or corporation attorney in such cities "shall become vacant upon the expiration of the terms of the governing body appointing them"; and section 4 provided that "All acts and parts of acts inconsistent with the provisions of this act be and the same are hereby repealed." Section 1 of the 1920 act was

amended by *L*. 1928, *c*. 97, *sec*. 1 merely to authorize "as many" (rather than two) "assistant city or corporation counsels" as the city or corporation counsel may, with the consent of the governing body, appoint, hence is not pertinent to the issues here involved. *L*. 1920, *c*. 65, *supra*, as amended by *L*. 1928, *c*. 97, *supra*, has been incorporated in the *Revised Statutes of* 1937, being set forth in *R. S.* 40:171–112, 113 and 114. It is readily seen that no provision for salary or compensation for officers or other members of the law department was made in the 1920 act. We discuss the construction and effect of this act in the next succeeding portion of this opinion.

The last act of the Legislature in relation to law departments in cities of the first class (other than the 1911 act and the 1920 act as amended, which have been later set forth in the *Revised Statutes of* 1937), appears to be *P. L*. 1931, *c*. 381, *p*. 985, at *p*. 993, which expressly repealed *L*. 1894, *c*. 258, *supra*.

*B—Construction and effect of P. L*. 1920, *c*. 65, *as amended, supra* (*R. S*. 40:171–112, 113, 114).

It is argued by the defendants that the positions of legal assistants were created by the 1920 act. This was the holding of the Appellate Division of the Superior Court in its decision below. *Jersey City v. Dept. of Civil Service*, 10 *N. J. Super*., 140, 148 (*App. Div*. 1950). Jersey City contends, *contra*, as in effect it did below, that the 1920 act was never properly effectuated in Jersey City by ordinance as required by law. On this aspect of the case we disagree with the learned court below and accept the construction advocated by Jersey City. It is further argued, by the defendants, that no salary ordinance was required to constitute them *de jure* employees. The latter contention is opposed by Jersey City. The court below decided that a salary ordinance was required and with this holding we are in accord. The reasons for our disposition of these two companion questions are hereinafter set forth.

P. L. 1894, c. 258, *supra*, P. L. 1911, c. 175, *supra*, and P. L. 1920, c. 65, *supra*, are *in pari materia*, and therefore must be construed together so as to effectuate general legislative policy. *Van Brookhoven v. Kennedy*, 125 N. J. L. 178, 182 (*Sup. Ct.* 1940) affirmed 125 N. J. L. 507 (*E. & A.* 1941); *Public Service Electric, &c., Co. v. Camden*, 118 N. J. L. 245, 253 (*Sup. Ct.* 1937). As discussed, *ante*, the 1911 act in effect amended and supplemented the 1894 act. The 1920 act repealed so much of the 1894 act and the 1911 act as was inconsistent with the terms of the 1920 act. The situation here exhibits clear and compelling indication of the legislative intent to repeal, and further, section 4 of the act included an express repealer of all acts and parts of acts inconsistent with the terms of the 1920 statute.

The 1894 act had provided that "there shall be" a law department in a city of the first class. This constituted a direct creation of such a department. The 1911 act merely related to such departments, and granted certain powers in connection therewith to the governing body of the municipality. The 1920 act provided "there shall be established" a law department in such a city. Although ordinarily the verb "shall" is employed in legislative enactments in the imperative or mandatory rather than the directory or permissive sense, in order to reach a sound construction resort may be had to the legislative history of legislation, *i. e.*, the prior statutes on the same subject, the legal history of the statute. *Murphy v. Zink*, 136 N. J. L. 235, 239 (*Sup. Ct.* 1947) affirmed 136 N. J. L. 635 (*E. & A.* 1948); 2 *Sutherland, Statutory Construction* (3d ed. 1934), sec. 5002, p. 483.

The proper construction to be given the 1920 act, therefore, is that it constituted a mandatory direction to cities of the first class to create new law departments in accord with the general outline of the 1920 statute, and not a creation of such a department or offices therein by the Legislature itself. The latter construction would be to imply that the Legislature had contemplated and executed a vain step, for it had

previously created similar departments under the 1894 act. The former construction, to which we adhere, indicates a legislative intent that the cities of the first class be directed to establish law departments having certain general similarity as to officers and employees, and their duties, but with the discretion placed in the governing bodies of the cities to decide how many of certain designated positions should be created according to their respective needs, and to decide the salary or compensation to be paid all officers and employees of the law departments. To summarize, *P. L.* 1920, *c.* 65, was a mandatory act requiring the cities of the first class to create law departments and to create positions therein within the confines of the statute.

It is suggested by the appellants that the law department of Jersey City was properly created by the resolution of the board of commissioners in 1913, and that the defendants' positions were thus established. However, it is conceded by them that the act of 1920 governs the issues involved in this appeal. Their suggestion is inconsistent with both their concession and the proper construction of the legislation under consideration. The 1920 act repealed the 1894 act and the 1911 act so far as they were inconsistent with the provisions of the 1920 act. Thus the Legislature abolished law departments created by itself by the 1894 act. The board of commissioners had no power to create a law department in 1913, by resolution or by ordinance, but merely had authority to invoke the provisions of the 1911 act relating to salaries, terms of office and powers of appointment to office in the law department created by the 1894 act. Municipal action gives way to general legislation. *Camden v. Civil Service Commission*, 129 *N. J. L.* 354, 358 (*Sup. Ct.* 1943) affirmed, 130 *N. J. L.* 532 (*E. & A.* 1943).

On the question of salaries, it is argued by the defendants that the Legislature intended not to repeal by the 1920 act portions of the 1911 act providing for assistants in the law department and that those provisions in the 1911 act permitted the creation of positions of legal assistants by resolu-

tion and the fixing of salaries for such assistants by resolution. In support of this contention defendants advert to the fact that the provisions of both the 1920 act and the 1911 act have been incorporated in the *Revised Statutes of 1937* (as we have indicated *ante*).

The 1911 act was not expressly repealed in 1931 (by *P. L. 1931, c. 381, p. 993, supra*) when the 1894 act was so expressly repealed. We are of the opinion that the provisions of the 1911 act, requiring establishment of positions and fixing of salaries therefor to be by ordinance, which were carried over into the *Revised Statutes of 1937* are not in conflict, and in fact are in accord, insofar as they relate to this controversy, with the 1920 act and the pertinent sections of the Home Rule Act, *P. L. 1917, Art. XIII, sec. 1, p. 350*, as amended by *P. L. 1919, c. 9, sec. 1, p. 26* (see *R. S.* 40:46–23), and *P. L. 1917, Art. XIV, sec. 1* (see *R. S.* 40:48–1) which provided for establishment of positions and of salaries by ordinance. The Legislature must be assumed to have been aware of these existing statutes and the rules of statutory construction. 2 *Sutherland Statutory Construction* (3d ed. 1943), *sec. 4510, p. 327*. Compare *Murphy v. Zink, supra*, at *p. 239*. It is settled law in this state that under *R. S.* 40:48–1, *supra*, a municipal office or position, if not created by statute, can come into being only by ordinance of the governing body of the municipality. *Handlon v. Town of Belleville*, 4 *N. J.* 99, 108 (1950). And that under *R. S.* 40:46–23, *supra*, salary ranges must in the first instance be fixed by ordinance. *Howard v. Mayor and Bd. of Finance of the City of Paterson*, 6 *N. J.* 373, 378 (1951).

Action establishing a law department, creating the positions of legal assistants therein, and providing for salaries in a city of the first class was required of the municipality by the act of 1920, and was required by law to be taken by ordinance. This construction is not novel. The 1920 act was so invoked and applied in the adoption of an ordinance establishing a law department by the City of Newark in January, 1921. This course was referred to in *Newark v.*

*Civil Service Commission,* 112 *N. J. L.* 571, 572 *(Sup. Ct.* 1934), affirmed 114 *N. J. L.* 185 *(E. & A.* 1935).

*C—Summary and analysis of the municipal action in the present case:*

■ We have discussed the legislation under which the defendants claim the right of restoration to their former supposed positions as legal assistants in the law department of Jersey City. We have also recited at length and in detail the municipal action by which each of the defendants initially entered employment. Repetition here will serve no useful purpose. The net result of a study of the facts of this case is that no action was taken by the governing body by ordinance, either to create the positions of legal assistant or to provide salary or compensation for appointees to those positions, and therefore there were no *de jure* positions of legal assistant at the time of the appointment and dismissal of the defendants.

■ The end result is that there may not be a *de facto* officer or incumbent of a position without a *de jure* office or position. *Handlon v. Town of Belleville, supra,* at *p.* 109; *Van Brookhoven v. Kennedy, supra,* at *p.* 182; *Davaillon v. Elizabeth,* 121 *N. J. L.* 380 *(Sup. Ct.* 1938).

## II

*The effect of P. L.* 1936, *c.* 6.

■ Defendant Timney contends that in his case a reversal is required by virtue of the provisions of *P. L.* 1936, *c.* 6. This act provided that the governing body of every municipality should have full authority, by resolution, to fix and determine the salaries and compensation to be paid to officers and employees of and persons holding positions in any such municipality between January 1, 1933 and January 31, 1937. The act was approved January 21, 1936, and took effect immediately, and thus was in effect when defendant Timney was appointed as a legal assistant. This act was amendatory of *P. L.* 1933, *c.* 459 and *P. L.* 1933, *c.* 14, and Jersey City contends that the three acts, which must be construed

together, were not salary validating acts such as *P. L.* 1923, *c.* 142 and *P. L.* 1927, *c.* 132 but were merely authorizations to municipalities to use the expeditious method of resolution in effecting economies in payroll expenditures necessitated by the economic emergency of those years. Both the preamble to *P. L.* 1933, *c.* 14, *supra*, and the full text of the several acts are strongly indicative of the validity of this argument. Furthermore these emergency acts provided that in fixing salaries or compensation there should be no discrimination among or between individuals in the same class of service. The record indicates that defendant Timney was appointed at a salary of $4,100 per annum, whereas other legal assistants were appointed at salaries of only $4,000 per annum.

Under the construction we have placed on *P. L.* 1920, *c.* 65, *ante*, there was no *de jure* position to which defendant Timney was appointed. Hence he did not hold a position in the municipality within the purview of *P. L.* 1933, *c.* 14, as amended by *P. L.* 1933, *c.* 459 and *P. L.* 1936, *c.* 6, *supra*. This series of legislation made no mention of validation of offices created by resolution. This factor, coupled with the purpose of the legislation stated in the preamble of *P. L.* 1933, *c.* 14, and the intent of the Legislature to be discovered from the text of the act and the amendments thereto, requires a construction that these statutes were not designed, and did not act, to validate positions not otherwise lawfully created. Furthermore, the action taken by the municipality in the instant case appears to have been discriminatory, thus contrary to the express language of these statutes and invalid.

For these reasons we hold this contention to be without merit.

## III

*Whether defendant Timney was entitled to be restored to his position of court clerk.*

Defendant Timney contends that he was permanently appointed to the office of court clerk. The facts, hereinabove recited, show that he was a legal assistant assigned to work in the Department of Public Safety in 1945, and also

in 1948 when in that department he was assigned to the First Criminal Court of Jersey City. On December 27, 1948, he was designated to serve as clerk in the new municipal court, effective January 1, 1949, pursuant to *P. L.* 1948, *c.* 264, as amended by *P. L.* 1948, *c.* 394 (*R. S.* 2:8*A*–1 *et seq.*). The municipality was authorized under the cited statute either to provide for a clerk of the municipal court or to designate any officer or employee of the municipality to serve as such clerk. Timney was designated. He did not resign from his position as legal assistant. He is not entitled to be restored to the position of municipal court clerk.

## IV

 *Whether defendants Meehan and Verga, honorably discharged war veterans, were protected by the Veterans' Tenure Act.*

Defendants Meehan and Verga invoke the protection of the Veterans' Tenure Act., *R. S.* 38:16–1, *et seq.*, as amended by *P. L.* 1942, *c.* 83, *sec.* 1. This point is without merit in view of the determination above expressed that the office of legal assistant did not exist *de jure*. *Bullock v. Jeffries,* 117 *N. J. L.* 595, 596 (*Sup. Ct.* 1937) affirmed 119 *N. J. L.* 27 (*E. & A.* 1937); *Serritella v. Water Commission, &c.,* of *Garfield,* 128 *N. J. L.* 259, 260, 263 (*Sup. Ct.* 1942).

## V

In view of the disposition we have accorded the foregoing questions it becomes unnecessary to consider whether the defendants are entitled to restoration to their pay and positions because it is alleged they were discharged for political reasons.

For the reasons above stated the judgment of the Appellate Division of the Superior Court is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For reversal*—None.