56 N.J. Super. 480 (1959)
153 A.2d 745
EZRA L. NOLAN, ET AL., PLAINTIFFS,
v.
CHARLES S. WITKOWSKI, ET AL., DEFENDANTS.
MEYER PESIN, MURRAY GREIMAN, CYRIL J. GALVIN, JEREMIAH J. O'CALLAGHAN, DAVID H. WERTHER, PATRICK A. KILEY, EUGENIA M.V. URBANSKICOURTNEY, WALTER J. HUDZIN, JOHN J. LEMKEN, GUSTAVE A. PEDUTO, WILLIAM N. JOHNSON, FRANCIS M. McINERNEY, EUGENE E. MASTRONARDY, INDIVIDUALLY AND AS ASSISTANT CORPORATION COUNSELS OF THE CITY OF JERSEY CITY, PLAINTIFFS-APPELLANTS,
v.
CHARLES S. WITKOWSKI, JAMES F. MURRAY, JR., BERNARD J. BERRY, INDIVIDUALLY, AND CHARLES S. WITKOWSKI, JAMES F. MURRAY, JR., BERNARD J. BERRY, WILLIAM V. McLAUGHLIN AND AUGUST W. HECKMAN, AS MEMBERS OF THE BOARD OF COMMISSIONERS OF JERSEY CITY, AND CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 22, 1959.
Decided July 10, 1959.
*483 Before Judges PRICE, GAULKIN and FOLEY.
Mr. Isadore Glauberman argued the cause for all plaintiffs.
Mr. John J. Hanlon, Jr. argued the cause for all defendants (Mr. John Milton, attorney).
The opinion of the court was delivered by GAULKIN, J.A.D.
The case in which Ezra L. Nolan is the first plaintiff will be called the Nolan case, and the one in which Meyer Pesin is the first plaintiff will be called the Pesin case. The plaintiffs appeal and the defendants cross-appeal from summary judgments (or denials thereof) entered in each of the above entitled cases. The appeals have been consolidated.
The undisputed facts upon which the court below acted are as follows:
By resolution dated May 21, 1957 the Board of Commissioners of Jersey City (hereafter called Jersey City) appointed *484 Nolan corporation counsel, at an annual salary of $12,000. On May 24 Nolan advised Jersey City that
"I have this day made the following appointments as Assistant Corporation Counsel in the Law Department, effective immediately, at the annual salary set opposite their respective names, viz.:

 James F. McGovern, Jr. ................. $9,000
 Meyer Pesin ............................ 8,500
 John J. Witkowski ...................... 8,500
 Murray Greiman ......................... 8,500
 Cyril J. Galvin ........................ 8,000
 Jeremiah J. O'Callahan ................. 7,000
 Louis P. Caroselli ..................... 7,000
 Joseph W. Tumulty ...................... 7,000
 David H. Werther ....................... 6,500
 Patrick A. Kiley ....................... 6,500
 William A. Massa ....................... 6,500
 Eugenia M.V. Urbanski-Courtney ......... 6,500
 Walter J. Hudzin ....................... 6,500
 John W. Yengo .......................... 6,000
 John J. Lemken ......................... 6,000
 Gustave A. Peduto ...................... 6,000
 William N. Johnson ..................... 6,000
 Eugene E. Mastronardy .................. 6,000
 Francis M. McInerney ................... 6,000"

On the same day Jersey City passed a resolution "that this Board consents to, concurs in and ratifies each of the * * * appointments and the salary attached to each of said appointments."
On March 24, 1959 Jersey City adopted a budget for the year 1959 which provided $77,000 for salaries of the assistants corporation counsel (among whom are Pesin and his 12 co-plaintiffs in the Pesin suit) instead of the sum which would be needed to pay them the above mentioned salaries for the budget year. Pesin and the 12 other assistants immediately started the Pesin action, in lieu of prerogative writ, alleging that
"The effect of said reduction in the budget as finally adopted, by reason of the payments already made to the full complement of `assistants' since January 1, 1959, leaves the sum of approximately $45,000 to pay the salaries of said `assistants' for the balance of *485 the year 1959. This sum is completely inadequate to meet the fixed full salaries and compensation due and to grow due to the `assistants' for the remainder of the year 1959.
The aforesaid acts of the `majority bloc' were ultra vires, in that neither the aforesaid quoted statutes nor any other statutes of the State of New Jersey grant to the Board of Commissioners the power to remove said `assistants,' nor do they grant said Board the power to diminish the salaries of said `assistants' during their terms of office, directly or indirectly."
The plaintiffs in the Pesin suit demanded judgment "Ordering and directing that the Board of Commissioners of the City of Jersey City appropriate an additional $50,000 so that there will be sufficient moneys to pay all of the assistants corporation counsel their full annual salaries for the year 1959."
On April 7, 1959 Jersey City adopted a resolution reciting:
"* * * that effective immediately and for the period remaining between this date and December 31 of the current year, in order to cause the expenditures for Assistant Corporation Counsels to conform to the program of economy and the budgetary allotment above described, the following Assistant Corporation Counsels be paid the salary set forth after each of their respective names: * * *."
Then followed the names of the assistants and a figure for each which represented a cut of 55% in his salary for the balance of the year 1959. Jersey City has made no effort to cut Nolan's salary. The assistants, and Nolan on their behalf, objected strenuously to these salary cuts, and pressed the action to compel the increase of the budget. On April 27, 1959 the plaintiffs in the Pesin action made a motion for summary judgment which was denied "without prejudice to renewal at a later time, on the ground that it was premature." Pursuant to leave granted, the plaintiffs in the Pesin action appeal from this denial.
On May 5, 1959 the city passed an ordinance (K-1674) which reads, in part, as follows:
"Section 1. Section 4 of Ordinance K-1263 be and the same hereby is amended to read: The Corporation Counsel's term of office shall *486 expire on May 18th, 1959. The terms of office of the Assistant Corporation Counsels shall expire on May 18th, 1959.
Section 2. All sections and parts of sections of Ordinance No. K-1263 (and amendments thereto) not amended herein shall remain in full force and effect."
The pertinent contents of Ordinance K-1263 will be set forth in detail hereafter. As soon as the May 5 amendment was passed Nolan and the 13 assistants filed the Nolan action, in lieu of prerogative writ, in which they demanded judgment declaring void the April 7 resolution cutting the salaries of the assistants and the May 5 amendment to the ordinance terminating their terms of office.
Each side moved for summary judgment in the Nolan action. The trial court entered summary judgment that the ordinance of May 5 (K-1674) was "null and void in its entirety"; that Nolan retain his office and the defendants be enjoined from ousting him "from office and from interfering with the performance of his duties as charged by law"; but that the complaint of the assistants be dismissed because "the position of the Assistants Corporation Counsel was not properly created by the ordinance K-1263 * * * as amended * * * in that the said ordinances failed to set forth a specific number of Assistants Corporation Counsel and therefore the plaintiffs, Assistants Corporation Counsel cannot maintain this action." It is from the portion of the judgment in favor of Nolan that Jersey City cross-appeals. The assistants, on the other hand, appeal from the dismissal of their claim in the Nolan action, which dismissal, if proper, ends the Pesin action as well.
All of the plaintiffs insist, and Jersey City denies, that under R.S. 40:171-112 to 116, as implemented by the ordinance of Jersey City passed in 1949 (K-1263) and amended in 1955 (K-1482), Nolan and the assistants hold legally created offices; that their terms will end only upon the expiration of the term of the governing body (in 1961); and that in the meantime Jersey City may not remove Nolan *487 nor any of the assistants, nor reduce the salaries or the number of the assistants.
The 1949 ordinance (K-1263) provides that
"The Corporation Counsel shall be appointed for a term coextensive with that of the Board of Commissioners appointing him and the term of office of the Assistant Corporation Counsels, * * * shall expire with the term of office of the Corporation Counsel appointing them, unless sooner removed by him. * * *"
This was repeated in the 1955 amendment to the ordinance (K-1482).
Sections 112 to 116 of R.S. 40:171 were construed in Jersey City v. Dept. of Civil Service, 7 N.J. 509 (1951), and that construction is, of course, binding upon us. In that case the Supreme Court pointed out that sections 115 and 116 of R.S. 40:171 were L. 1911, c. 175, and that "although not in express words a supplement to or amendment of [L. 1894, c. 258] this statute effectively so operated" (7 N.J. at page 518). Sections 112 to 114, on the other hand, were L. 1920, c. 65, as amended by L. 1928, c. 97, and control "the legality of appointments made after April 5, 1920, the effective date of that act" (7 N.J. at page 518). The court held that even though said L. 1894, c. 258, was repealed by L. 1931, c. 381, the 1894, 1911 and 1920 acts "are in pari materia, and therefore, must be construed together so as to effectuate general legislative policy" (7 N.J. at page 522).
Since 1894 that legislative policy has been, and is now, that first class cities must have a law department, which shall consist of at least a city counsel. So far as we have been informed, in no other type of municipality is that mandatory. Cf. R.S. 40:171-109; Brenner v. City of Bayonne, 132 N.J.L. 47 (Sup. Ct. 1944), affirmed o.b. 132 N.J.L. 469 (E. & A. 1945).
In fact, the 1894 act was self-executing and itself "constituted a direct creation of such a department" (7 N.J. at page 522). For the purposes of this case it is significant *488 to note that the 1894 act provided that in each first class city "there shall be a law department which shall consist of the following officers: a city or corporation counsel, a city or corporation attorney, and an assistant city or corporation attorney * * * they shall serve for the term of two years, and until their successors shall have been appointed." The act provided that the city counsel and the city or corporation attorney shall be counsellors, while the assistant city attorney may be an attorney at law; and "all of said officers shall be appointed by the respective mayors of said cities on the fourth Tuesday in May * * * [1894] and on the fourth Tuesday of each second succeeding year thereafter." Any vacancy which occurred thereafter was to be filled for the unexpired term only. Finally, the mayor was to fix the salaries, at not more than $6,000 for counsel, not more than $4,000 for the attorney, and not more than $1,500 for the assistant city attorney. (By L. 1900, c. 33, the maximum salary for assistant city attorney was raised to $2,500).
L. 1911, c. 175 (now R.S. 40:171-115, 116) must be quoted almost in full. The pertinent provisions are as follows:
"1. In cities of the first class of this State the common council or other board or body having control of the finances * * * may by resolution fix the salaries and compensation to be paid to the city or corporation counsel, the city or corporation attorney and the assistant city or corporation attorney of such city, and the salary or compensation of any such officer having been so fixed shall not be increased or diminished during his term of office. Until so fixed, the salaries and compensation of such officers shall be and remain as now fixed by law.
2. The common council or other board or body having control of the finances * * * may provide, from time to time, by resolution, for an additional assistant or additional assistants to the city or corporation counsel, who shall be attorneys at law of good standing, shall be appointed by the city or corporation counsel, and shall perform such work and discharge such duties as shall be assigned to him. The ordinances providing for such assistant or assistants shall fix the terms of office and the salaries or compensation to be paid. Such assistants shall not be required to pass an examination as to fitness, and may be removed by the city or corporation counsel *489 at any time without cause assigned, but appointment by the city or corporation counsel to fill any vacancy caused by such removal, or otherwise, shall be for the remainder of the unexpired term only."
L. 1920, c. 65 was entitled "An Act to establish a law department in cities of the first class in this State" and provided:
"1. In each city of the first class in this State there shall be established a law department, which shall consist of a city or corporation counsel, appointed by the governing body of such city, a private secretary, appointed by the city or corporation counsel, and two assistant city or corporation counsels, and as many legal assistants, clerks and other employees as the city or corporation counsel, with the consent of the governing body, shall appoint. Such assistant city or corporation counsels and private secretary shall be removable at the pleasure of the city or corporation counsel, but the legal assistants, clerks and other employees shall be deemed to be within purview of [the Civil Service Act].

* * * * * * * *
3. The offices of the city or corporation counsel, city or corporation attorney and assistant city or corporation attorney, in such cities, shall become vacant upon the expiration of the terms of the governing body appointing them.
4. All acts and parts of acts inconsistent with the provisions of this act be and the same are hereby repealed."
In 1928 (L. 1928, c. 97) this act was amended to substitute the words "as many assistant city or corporation counsels" in place of the words "two assistant city or corporation counsels"; and as amended the act is now R.S. 40:171-112 to 114. In Jersey City v. Dept. of Civil Service, supra, the Supreme Court held (7 N.J. at pages 522-523) that R.S. 40:171-112 to 114 was not self-executing, as the 1894 act had been, but:
"The proper construction to be given the 1920 act, therefore, is that it constituted a mandatory direction to cities of the first class to create new law departments in accord with the general outline of the 1920 statute, and not a creation of such a department or office therein by the Legislature itself. The latter construction would be to imply that the Legislature had contemplated and executed a vain step, for it had previously created similar departments under the 1894 act. The former construction, to which we adhere, indicates a legislative intent that the cities of the first class be directed to *490 establish law departments having certain general similarity as to officers and employees, and their duties, but with the discretion placed in the governing bodies of the cities to decide how many of certain designated positions should be created according to their respective needs, and to decide the salary or compensation to be paid all officers and employees of the law departments. To summarize, P.L. 1920, c. 65, was a mandatory act requiring the cities of the first class to create law departments and to create positions therein within the confines of the statute." (Emphasis ours.)
This history, plus the construction placed upon it by the Supreme Court in the cited case, make it plain that continuously since 1894 the Legislature has intended that each first class city must have at least a city counsel. However, since L. 1920, c. 65, as amended by L. 1928, c. 97, the city need provide for only as many assistants corporation counsel as it desires  or for none at all. That decision the city must express by ordinance. R.S. 40:46-23; Jersey City v. Dept. of Civil Service, supra; Wagner v. Borough of Lodi, 56 N.J. Super. 204 (App. Div. 1959). That was equally true prior to 1920 as to all assistants except the city attorney and the assistant city attorney. R.S. 40:171-116. And since it is optional with the city whether to have assistants corporation counsel and legal assistants or not, and how many, the city may, for bona fide reasons of economy amend its ordinance to reduce their salaries or their number or do away with them altogether. City of Newark v. Civil Service Commission, 112 N.J.L. 571 (Sup. Ct. 1934), affirmed o.b. 114 N.J.L. 185 (E. & A. 1935); Pellet v. Dept. of Civil Service, 10 N.J. Super. 52, 57 (App. Div. 1950), certification denied 6 N.J. 314 (1951). Cf. Weaver v. N.J. Dept. of Civil Service, 6 N.J. 553 (1951); Schnipper v. Twp. of North Bergen, 13 N.J. Super. 11, 15 (App. Div. 1951); Annotations, 4 A.L.R. 205, 172 A.L.R. 1366.
Not so, however, with the city counsel. His office may not be abolished; and we interpret R.S. 40:171-114 as giving him a term from the date of his appointment to the end of the life of the governing body appointing him, which the city may not shorten.
*491 Jersey City disagrees. It argues that R.S. 40:171-114 merely sets the time when the term of the city counsel must end. The city insists it may fix any term for the city counsel it pleases, or provide that he serve at its pleasure and be removed at its will, and alter that term at any time to lengthen or shorten it  always provided that it ends with the life of the appointing body. Hence, says the city, the fact that Ordinance K-1263 and the 1953 amendment (K-1482) provided that Nolan was to have a term ending with the life of the governing body did not prevent the city from shortening the term, as it did in the challenged ordinance of May 5, 1959 which ended his term on May 18, 1959. The city argues, and with considerable force, that said R.S. 40:171-114 says nothing about "term" or "tenure," nor does it speak of the holder of the office. Instead, it speaks of the office itself becoming "vacant." Such language is customarily used, says the city, to take care of a transition from one form of governmental agency to another, citing as an example the language of the 1894 act, above mentioned, wherein it provided that the offices of all law officers theretofore appointed "shall become vacant." That language is as follows:
"4. And be it enacted, That on the third Monday in May, one thousand eight hundred and ninety-four, the offices of city or corporation counsel, corporation attorney, and assistant city or corporation attorney, the offices of the counsel and attorney of any board of works, board of street and water commissioners, the board of health, aqueduct board, the commissioners of adjustment, and the office of every other law officer of said city shall become vacant, and the terms of said officers shall then cease, although they may have been appointed for a longer term."
The city's brief says that R.S. 40:171-114 merely provided that (and we quote from the brief)
"In addition to legally vacating the office of any City or Corporation Counsel, City or Corporation Attorney, and Assistant City or Corporation Attorney, in existence at the time of the adoption of the 1920 Act, so that they would be out of office and out of *492 existence upon `the expiration of the term of the governing body who may have appointed them' prior to 1920, the legislature also made provisions in Section 3 of the 1920 Act for the manner in which the office of `City or Corporation Counsel,' which said office was recreated by Section 1 of the 1920 Act, `shall become vacant' after such officer was appointed under the 1920 Act."
We agree that R.S. 40:171-114 does mean what the above quotation from the city's brief says it means, but we do not agree that that is all that section 114 means. In the light of said history of the three statutes, and of the evidence of the intent of the Legislature contained in the statutes, and the construction placed thereon by the Supreme Court in Jersey City v. Dept. of Civil Service, supra, it is plain that the Legislature meant for law departments in first class cities to have a fixed life and a substantial degree of independence. In 1894 the Legislature gave the city counsel a fixed and irrevocable term of two years. The 1911 Act (R.S. 40:171-115) added another measure of security and independence  that once fixed, his salary "shall not be increased or diminished during his term of office." In addition, it gave him (R.S. 40:171-116) the right to appoint as many assistants as the city might provide for by ordinance, below the level of the "city or corporation attorney and the assistant city or corporation attorney," who were still to be appointed by the same appointing authority which appointed him city counsel. Finally, the 1920 act gave the city counsel still further power  it abolished the city or corporation attorney and assistant city or corporation attorney appointed by the governing body, and instead gave him the right to appoint two assistants; and in 1928 "two" was changed to as many as the governing body might permit. In addition, the 1920 act gave the city counsel the right, which he had not theretofore had, to appoint legal assistants, clerks and all the other employees of the law department. Is it conceivable that while constantly strengthening the independence and power of the city counsel from 1894 to 1920, the Legislature at the same time intended by the 1920 act to shear him, like Samson, of the source of that strength? *493 Without a term of office in the city counsel all else falls. If that be so, the Legislature must have intended that the city counsel have a life that cannot be snuffed out by the governing body whenever it is displeased with him.
The statutes contain internal evidence that such independence was intended. The city counsel is absolutely entitled to a private secretary of his own choice. The only thing that the city can do with reference to the private secretary is to fix the salary. Once the city tells the city counsel the number of assistants and other employees he may choose, the city counsel has the exclusive right to choose the individuals. Once chosen, the assistants corporation counsel may be removed only by the city counsel. Even the employees below the grade of assistant corporation counsel may not be dismissed by the city, for they have the protection of civil service. All of these devices, obviously built in to insure the law department a measure of independence, are meaningless if the counsel can be discharged at will.
For the foregoing reasons we find that by the words of R.S. 40:171-114 the Legislature intended to, and did, give to the city counsel a term co-extensive with the life of the governing body, which the city may not cut short. Cf. Cahill v. Town of West Hoboken, 90 N.J.L. 398, 402 (Sup. Ct. 1917), affirmed o.b. 93 N.J.L. 247 (E. & A. 1919).
The judgment in favor of Nolan is therefore affirmed.

II.
The trial court ruled that the 13 assistants corporation counsel did not hold validly created offices because the above mentioned ordinances did not fix the number of assistants.
The first ordinance (K-1263) was passed in 1949 (after the litigation had begun which ended with the decision of Jersey City v. Dept. of Civil Service, supra). That ordinance provided:
*494 "Section 12. The annual minimum and maximum salaries of the various members of and employees of the Law Department shall be as follows:

 Annual Annual
 Minimum Maximum
 Position Salary Salary
Corporation Counsel ............................. $10,000.00 $12,500.00
Assistant Corp. Counsel ......................... 7,000.00 10,000.00
Legal Assistants ................................ 4,000.00 7,000.00
Private Secretary to Corporation Counsel ........ 4,000.00 5,500.00
Chief Clerk ..................................... 4,000.00 5,000.00
Clerks .......................................... 2,500.00 3,500.00
Law Clerk Stenographer .......................... 2,000.00 3,500.00
Stenographer-Typist ............................. 2,000.00 3,500.00
Legal Investigators ............................. 2,500.00 3,500.00"

Note that "Assistant Corporation Counsel" is singular, as is "Corporation Counsel"; "Legal Assistants," plural. "Chief Clerk" is singular, as is "Private Secretary to Corporation Counsel"; "Clerks," plural. "Law Clerk Stenographer" and "Stenographer-Typist" are singular; "Legal Investigators," plural. Nowhere is any number given.
In May 1955 the above ordinance (K-1263) was amended, by ordinance K-1482. This amendment eliminated legal assistants altogether, and provided:
"5. Section 12 of Ordinance No. K-1263 be and the same is hereby amended to read: The annual salary of the Assistant Corporation Counsel shall not be less than Three Thousand Five Hundred Dollars ($3,500.00) and not more than Ten Thousand ($10,000.00) Dollars, payable in equal semi-monthly installments."
Lest we be charged with approval sub silentio, we must indicate our opinion that an ordinance which provides for a salary range of from $3,500 to $10,000, with no standards to control the discretion of those who are to fix the salaries, does not comply with R.S. 40:46-23. McKann v. Town of Irvington, 133 N.J.L. 575, 576 (E. & A. 1945), affirming 133 N.J.L. 63 (Sup. Ct. 1945). For the same reason we must further state that our dealing with specific portions of the ordinances does not indicate our approval of *495 all of the remaining provisions. Indeed, we have serious doubts about some of them.
Where the statutes are silent as to how delegated powers are to be exercised by a municipality, they may be exercised either by resolution or by ordinance. Howard v. Mayor and Bd. of Finance of City of Paterson, 6 N.J. 373, 377 (1951). However "The legislature has decreed that this delegated power to create municipal offices and positions, and to prescribe the compensation and duties appertaining thereto, involving as it does an increase of the financial burden of local government, shall be exercised only by ordinance." Davaillon v. City of Elizabeth, 121 N.J.L. 380, 381 (Sup. Ct. 1938).
Why has the Legislature been so insistent that municipal offices and positions be created, and the salaries prescribed, only by ordinance? "The primary design of these provisions was to afford public notice of the particulars of a proposed exercise of such power, and thus to secure conformance with the basic statutory consideration, i.e., the `proper and efficient conduct of the affairs of the municipality.'" (Emphasis ours.) Davaillon v. Elizabeth, supra, at page 382; Howard v. Mayor, supra; Wagner v. Borough of Lodi, supra. A resolution may be introduced and passed in a few minutes, without the knowledge of any one except those present. An ordinance, on the other hand, is a "deliberative process requiring notice to the public." Handlon v. Town of Belleville, 4 N.J. 99, 16 A.L.R.2d 1118 (1950). It requires reading at more than one meeting, and publication in the press before final action. There is thus not only notice to the public, with a date fixed for the voice of the people to be heard, but time as well for the members of the governing body to reflect, deliberate and debate, before final action. Hale v. Council of Town of Kearny, 99 N.J.L. 334 (Sup. Ct. 1923). A locus poenitentiae may be as valuable to a municipal father as to others in less hallowed occupations.
*496 The salutary purposes of the provisions which compel the use of an ordinance are defeated if the public is not informed of at least the approximate salary attached to each office and the maximum number of officers who will be in receipt thereof. An ordinance which does not tell the public these things does not comply with the statutes, for then the public is not informed of the "increase of the financial burden of local government." Keegan v. City of Bayonne, 81 N.J.L. 120 (Sup. Ct. 1911). Cf. McKann v. Irvington, supra. The weight of authority is in accord. City of Dallas v. McDonald, 130 Tex. 299, 103 S.W.2d 725, 107 S.W.2d 987 (Sup. Ct. 1937); Holcombe v. Grota, 129 Tex. 100, 102 S.W.2d 1041, 110 A.L.R. 234 (Sup. Ct. 1937); Burley v. Barber, 286 Ill. App. 486, 3 N.E.2d 939 (App. Ct. 1936); Murphy v. Industrial Commission, 355 Ill. 419, 189 N.E. 302 (Sup. Ct. 1934); City of San Antonio v. Coultress, 169 S.W. 917 (Tex. Ct. App. 1914) (not officially reported), leave to appeal denied, 108 Tex. 150, 179 S.W. 515, 187 S.W. 194 (Sup. Ct. 1915); Moon v. City of Champaign, 214 Ill. 40, 73 N.E. 408 (Sup. Ct. 1905). Some of these cases cite and follow the Keegan case, supra. And see Annotation, 110 A.L.R. 241. If this were not the rule, then under an ordinance such as here involved, a city might by resolution appoint one assistant corporation counsel at $3,500 per year, or 20 at $10,000 a year, without any notice to the public.
Plaintiffs cite Mullin v. Ringle, 27 N.J. 250 (1958), and Hamill v. City of Clifton, 10 N.J. Misc. 843 (Sup. Ct. 1932), for the proposition that the ordinance need not fix the number of officers. The question is not discussed in the opinion in the Mullin case. Plaintiffs assert that at the oral argument of the Mullin case in the Supreme Court the point was raised by counsel, although it had not been raised below, and that thereafter counsel wrote the Supreme Court supplementing their oral discussion of the point. Since the question is not mentioned in the Mullin opinion we may assume that the Supreme Court elected not to pass upon it. *497 In any event, we may not accept the silence of the Mullin opinion as a decision in favor of the plaintiffs.
In the Hamill case the appointment of firemen was attacked because the ordinance under which they were appointed "does not fix the number of firemen * * *." Strangely enough, even though, as we have shown supra, the Keegan case was being cited and followed in other jurisdictions, it is not mentioned in Hamill. Plainly it was not brought to the attention of the court, for the court upheld the appointments upon the authority of two cases which had not dealt with the subject at all  namely, Anderson v. Weehawken, 97 N.J.L. 371 (Sup. Ct. 1922), and Green v. City of Cape May, 41 N.J.L. 45 (Sup. Ct. 1879). The Anderson case held that since the firemen there involved were appointed by resolution "the position of each individual" was properly abolished by resolution. The court did say that the ordinance provided the said "committee may from time to time appoint such additional members to the fire department * * * as said committee may determine * * *," but the exact words of the ordinance are not given in the opinion, nor was the validity of such an ordinance questioned or discussed.
In Green v. City of Cape May, supra, the only question involved was whether the charter of Cape May required an ordinance to authorize the purchase of equipment for the fire department. No statute was involved. Cf. City of San Antonio v. Coultress, supra, 179 S.W. 515. In addition, it is noteworthy that in the Green case the court said that it was "the temporary and recurring necessities of the department" that may be provided for by resolution  like "employment of hands, the purchase of oil, etc." Obviously, the court was not talking about law officers who were to receive up to $10,000 a year, or the 1879 equivalent thereof. Of course a municipality may from time to time need to hire employees whose work and usefulness are such as to make it impossible to foretell even approximately the numbers that will be needed. Perhaps in such case the ordinance *498 need not state numbers. We indicate no opinion on that point, for no such considerations can be advanced to justify an ordinance under which a municipality may by resolution appoint as many high salaried (and part time) law officers as it pleases. (Here, 19 initially; total salaries $132,000 annually).
It may be that Hamill might have been decided differently had Keegan been cited to the court. In any event, we consider Keegan as expressing the correct rule.
Plaintiffs argue that section 16 of the 1949 ordinance (K-1263) did, in effect, say that there shall be at least five assistants corporation counsel. We disagree.
Said section provided as follows:
"This Ordinance shall take effect immediately, and the appointments heretofore made by [sic] John B. Graf, as Corporation Counsel, at the salary of $12,500.00, and of Jacob J. Levey, as Assistant Corporation Counsel, at a salary of $10,000.00, and of Harold Krieger, as Assistant Corporation Counsel, at the salary of $8,500.00, and of Louis E. Saunders, as Assistant Corporation Counsel, at the salary of $8,500.00, and of Francis X. Fahy, as Assistant Corporation Counsel, at the salary of $8,500.00, and of Michael F. Reilly, as Assistant Corporation Counsel, at the salary of $8,500.00, and of Robert J. Rubacky, as Legal Assistant, at the salary of $7,000.00, and of Edward S. Hayden, as Private Secretary to the Corporation Counsel, at the salary of $5,000.00 are hereby ratified and confirmed."
As was pointed out in Jersey City v. Dept. of Civil Service, supra, the Jersey City law department was established in 1913 by resolution. No ordinance was passed until K-1263, quoted above, in 1949. In May 1949 there had been an election. The newly elected commissioners took the position (subsequently sustained by the Supreme Court in 7 N.J. at page 509) that an ordinance was essential for the organization of the law department; and that was why K-1263 was adopted. But it was not adopted until October 18, 1949, and in the meantime the gentlemen named in section 16 had been appointed. Therefore it seems obvious that section 16 was put in the ordinance to validate their *499 appointments and the salaries that had been paid to them prior to the adoption of the ordinance. However, those mentioned in section 16 are no longer in the law department. Not only that, but the position of "Legal Assistant" has been abolished; the salary of one assistant corporation counsel ($10,000), stated in section 16, is higher than the salary of the highest paid assistant now holding office; and the other four assistants named in section 16 each had a salary of $8,500 whereas among the present assistants there are only three who have salaries in that amount. In short, section 16 did not create the offices, as an ordinance which said there shall be "five assistants corporation counsel and one legal assistant" would have done.
Plaintiffs argue that a statement of the numbers of assistants is not necessary because the appointing power is in the city counsel and the governing body merely ratifies or rejects. They say that the basis for the contention that the number of officers must be stated is to prevent the governing body from appointing as many as it, in its uncontrolled discretion, desires, and since that cannot be done here the rule enunciated in Keegan should not apply.
A similar argument was advanced in City of Dallas v. McDonald, supra, 103 S.W.2d 725. There the charter provided that "The Police Department shall be composed of the Chief of Police and of such other officers, patrolmen and employees as the City Manager may determine." Another section of the charter provided that "The Council shall have power by ordinance to establish * * * offices." The plaintiffs had been appointed as police officers by the city manager. There was no "ordinance of the * * * city * * * creating any offices of policemen * * * or prescribing the number of police officers or patrolmen." (Emphasis ours.)
The Supreme Court of Texas held that plaintiffs' "offices have never been legally created," saying
*500 "* * * All that this section purports to do is to authorize the city manager to determine what personnel shall man the police department, such as officers, patrolmen, and employees, and the number thereof. One of the fundamental purposes of the provision for a city manager was to create a salutary check upon the legislative department in the creation of offices and places of emolument. It is further obvious, however, that the power granted to the city manager was not in any manner to take from the power of the city council to create offices within the police department, but was merely intended as a restraint upon the exercise of such power."
In Jersey City v. Dept. of Civil Service, 10 N.J. Super. 140, 150 (1950), the Appellate Division agreed that the 1920 act constituted "a comprehensive systematic and self-contained charter, so to say, for the law departments of first class cities"; yet it held that Jersey City still had to have a salary ordinance to implement it. Moreover, the court said, R.S. 40:46-23 by its terms provides that such a salary ordinance must state the salary "to be paid to each officer." In that case it was argued that R.S. 40:46-23 had been complied with because "reference to the annual budgets of Jersey City for the years in question discloses * * * that appropriations in a lump sum were set up for the payment of salaries to those designated as `Assistants to the Corporation Counsel.'" The Appellate Division rejected this argument (at page 151) for various reasons, one of which was that "no specific mention of the names of the respondents is made therein nor to the amount of salary to be paid them. The budget ordinance did not satisfy the statutory requirement."
On appeal the Supreme Court held that not only the salaries, but the law department itself, must be defined, and the officers and employees therein enumerated, by ordinance. We interpret the decision of the Supreme Court to be that the 1911 act (R.S. 40:171-115, 116) empowered a city, by ordinance, to "create new positions for assistants * * * and in such ordinance * * * fix the terms of office and the salaries," and, up to the maximum fixed by such ordinance, "by resolution to provide for i.e., to permit an increase *501 or decrease in numbers of such additional assistants, to be appointed by the city or corporation counsel" (7 N.J. at page 519); and that the 1920 act (R.S. 40:XXX-XXX-XXX) did not change that pattern. Such a pattern is not unusual in municipal government. Cf. Spears v. Bd. of Comm'rs, 10 N.J. Misc. 962 (Sup. Ct. 1932), affirmed 110 N.J.L. 173 (E. & A. 1932); Donovan v. Bd. of Com'rs of City of Bayonne, 12 N.J. Misc. 792 (Sup. Ct. 1934). Cf., R.S. 51:1-45; Van Brookhoven v. Kennedy, 125 N.J.L. 178 (Sup. Ct. 1940), affirmed o.b. 125 N.J.L. 507 (E. & A. 1940); Marks v. Monmouth County, 13 N.J. Misc. 560 (Sup. Ct. 1935); Neilley v. City of Passaic, 13 N.J. Misc. 283 (Sup. Ct. 1935).
Plaintiffs point out that the trial court raised the question of the lack of numbers in the ordinance sua sponte, and argue that it had no right to do so. That is not so. Howard v. Mayor, supra, 6 N.J. at page 376; Wagner v. Borough of Lodi, supra. Besides, in matters of law  especially of public law  the court is never foreclosed by the silence, or even by the stipulation, of the litigants. Edelstein v. City of Asbury Park, 51 N.J. Super. 368 (App. Div. 1958). Cf. Borough of Leonia v. Borough of Fort Lee, 56 N.J. Super. 135, 144 (App. Div. 1959).
For the foregoing reasons we agree with the trial court that the positions of assistants corporation counsel claimed by plaintiffs were not legally created. Therefore the judgment in the Nolan case, dismissing the complaint of the assistants, is affirmed. This makes academic the Pesin action to compel Jersey City to increase its budget. Therefore the appeal in that case is dismissed.
No costs.