VICTOR DAVAILLON, PROSECUTOR, v. THE CITY OF ELIZA-
BETH, A MUNICIPAL CORPORATION, CIVIL SERVICE
COMMISSION OF THE STATE OF NEW JERSEY AND
THOMAS P. LUCHIO, DEFENDANTS.

Submitted May 3, 1938—Decided November 16, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and
HEHER.

For the prosecutor, *Osborne, Cornish & Scheck* (*Harry V.
Osborne* and *Ervin Fulop,* of counsel).

For the defendant the city of Elizabeth, *Edward Nugent.*

For the defendant Thomas P. Luchio, *Daniel J. O'Hara.*

The opinion of the court was delivered by

HEHER, J. The proceedings under review are, first, a resolution adopted by the council of the city of Elizabeth on April 5th, 1937, creating the "position of Assistant City Clerk * * * to assist the City Clerk and act in his absence," and appointing defendant Luchio to the position so created at an annual salary of $2,500, and the action of the State Civil Service Commission in classifying the position "in the exempt division of the classified service, in accordance with section 13-1 of chapter 156, laws of 1908, as amended by chapter 51, laws of 1914," all returned pursuant to a writ of *certiorari* issued on February 1st, 1938, on petition presented on September 2d, 1937; and, second, an ordinance adopted by the municipal governing body on April 5th, 1938, creating the "position of Assistant City Clerk * * * for a term of three (3) years," and "until his successor shall have been duly appointed and qualified," at an annual salary of $2,500, and prescribing that the incumbent "shall be under the orders and direction of the City Clerk and City Council" of the municipality, and shall have, "in the opinion of the City Clerk," among other qualifications, a familiarity with certain statutes and ordinances, the "bulletins of the State Commissioner of the Alcoholic Beverage Control, and the rules and regulations" of the local board of alcoholic beverage control, returned in obedience to the command of a writ of *certiorari* issued on April 12th, 1938.

*First:* As to the resolution:

The legislature has decreed that this delegated power to create municipal offices and positions, and to prescribe the compensation and the duties appertaining thereto, involving as it does an increase of the financial burden of local government, shall be exercised only by ordinance.

Article XIV, section 1, of the Home Rule act of 1917 (*Pamph. L., p. 352; R. S. 1937,* 40:48-1) invests the munici-

pal governing body with authority to provide, by ordinance, "for the employment and compensation of such officials and employes, in addition to those provided for by statute, as may be deemed necèssary for the proper and efficient conduct of the affairs of the municipality," and to "prescribe and define, except as otherwise may be provided by statute, the duties and terms of office of all officers, clerks and employes of the municipality." And article XIII, section 1, of that enactment, as amended by chapter 9 of the laws of 1919 (*Pamph. L.* 1917, *p.* 350; *Pamph. L.* 1919, *p.* 26; *R. S.* 1937, 40:46-23), authorizes the governing body, also by ordinance, "to fix and determine the amount of salary, wages and compensation to be paid each officer, employer (*sic*), servant and agent of such municipality who, by law, is entitled to be paid a salary, wage or compensation."

The primary design of these provisions was to afford public notice of the particulars of a proposed exercise of such power, and thus to secure conformance with the basic statutory consideration, *i. e.*, the "proper and efficient conduct of the affairs of the municipality." They have been so construed. *Eckerson* v. *City of Englewood,* 82 *N. J. L.* 298; *affirmed,* 83 *Id.* 627; *Connors* v. *Hillman,* 86 *Id.* 490; *Hale* v. *Town of Kearny,* 99 *Id.* 334; *Benson* v. *Weiler,* 6 *N. J. Mis. R.* 465.

*Second:* As to the ordinance:

Section 1 creates "the position of Assistant City Clerk * * * for a term of three (3) years." Section 2 provides that the incumbent "shall be under the orders and direction of the City Clerk and City Council." Section 4 declares that "the term of said office shall be for a period of three (3) years or until his successor shall have been duly appointed and qualified."

It is the insistence of prosecutor that the prescription of a fixed term was *ultra vires* the municipality, in that it disregards the provision of section 21 of the municipal charter (*Pamph. L.* 1863, *pp.* 109, 115), investing the governing body with the power to appoint "a city clerk, city treasurer, street commissioner or street commissioners, city surveyor, sealer of weights and measures, city attorney, chief of police

and one or more assistants, one or more overseers of roads, one or more overseers of the poor, and such other subordinate officers not herein named as they shall think necessary for the better ordering and governing the said city, and the carrying into effect the powers and duties" thereby "conferred and imposed upon the said city council," and providing that "every person who shall be appointed to any office under the provisions" thereof "shall continue" therein until it "shall be declared vacant, or until another person shall be appointed to succeed him," and shall assume the duties thereof. The point is lacking in substance.

By section 40:48-1, *R. S.* 1937 (which embodies paragraphs 1 (c) and (d) of article XIV of the Home Rule act of 1917, pages 319, 352), the governing body of every municipality was clothed with power to make, amend, repeal and enforce ordinances to "prescribe and define, *except as otherwise provided by law,* the duties and terms of office or employment, of all officers and employes; and to provide for the employment and compensation of such officials and employes, in addition to those provided for by statute, as may be deemed necessary for the efficient conduct of the affairs of the municipality." This is general legislation; and it therefore constitutes a repealer of all inconsistent rules and provisions in the local charter. The contrary construction would render the provision unconstitutional. *Haynes* v. *Cape May,* 52 *N. J. L.* 180; *Uffert* v. *Vogt,* 65 *Id.* 377; *affirmed, Id.* 621; *Peal* v. *Newark,* 66 *Id.* 265.

But the Civil Service act of 1908 (*Comp. Stat.* 1910, *p.* 3795; *R. S.* 1937, 11:1-1 *et seq.*), adopted by the defendant municipality on November 4th, 1913, plainly falls into the category of general legislation, and therefore the qualifying phrase "except as otherwise provided by law," contained in section 40:48-1, *R. S.* 1937, serves to subject the exercise of the power so conferred to the provisions of that enactment. Any doubt as to this is resolved by the more specific expression in section 40:46-12 that no "provision" embodied in subtitle 3 of title 40 of the Revised Statutes, *supra* (which includes section 40:48-1), shall "make void or change any

provisions of title 11, Civil Service, nor any of the provisions of any other tenure of office act." Thus it is that the authority conferred by section 40:48-1 is to be exercised in complete subordination to the provisions relating to civil service.

It remains to consider whether the ordinance contravenes the Civil Service law. We think it does.

This statute provides that "Appointments to and promotions in the civil service of a * * * municipality" adopting the system "shall be made only according to merit and fitness, to be ascertained, as far as practicable, by examinations, which as far as practicable shall be competitive." *Section* 11:21-3.

The "classified service" embraces "all persons in the paid service of a * * * municipality * * * not included in the unclassified service as enumerated" in the statute. *Section* 11:22-3. The "unclassified service" comprises certain offices and positions plainly not inclusive of the one created by the ordinance under review, and the "heads of departments, the members of commissions and boards elected by the board of aldermen, common council or other governing body" of the municipality. *Section* 11:22-2.

The civil service commission is enjoined to arrange "the offices, positions and employments in the classified service" of the municipality "in four classes, to be designated as the exempt class, the competitive class, the non-competitive class, and the labor class, which classification may be changed from time to time as the commission may deem proper. *Section* 11:22-4.

Appointments to offices and positions in the exempt class "may be made without examination." *Section* 11:22-25. The exempt class embraces, among others not inclusive of this particular position, (a) "the deputy or first assistant of principal executive officers authorized by law to act generally for and in place of his principal," and (c) "one secretary or clerk of each department, appointed board or commission authorized by law to appoint a secretary or clerk." *Section* 11:22-26. The civil service commission is empowered to include "in the exempt class all other offices or positions,

except laborers, for the filling of which competitive or non-competitive examinations shall be found by the commission to be impracticable." No additional "office or position shall be" so classified "except after public hearing," on "suitable public notice;" and the exercise of this authority is further circumscribed by other considerations not here pertinent. *Sections* 11:22-27, 11:22-28. This, it will be observed, is within the exclusive province of the civil service commission; no such power resides in the municipal governing body.

The competitive class "shall include all positions for which it is practicable to determine the merit and fitness of applicants by competitive examinations, and all positions and employments of whatever functions, designations or compensations in each branch of the classified service except positions in the non-competitive class, exempt class or labor class." *Section* 11:22-30. The authority to conduct the examination is vested in the civil service commission; and appointments to all positions in the competitive class are required to be made from the eligible list certified by the commission. *Section* 11:22-32.

The non-competitive class "shall include all positions not in the exempt or labor class and which it is impracticable to include in the competitive class;" and appointments to such positions "shall be made after such non-competitive examination as shall be prescribed by the rules" of the civil service commission. *Section* 11:22-45.

And so, with certain definite exceptions, the competitive system, as a means of ascertaining the "merit and fitness" of candidates for an office or position within the classified division, embodies the basic statutory policy. A departure is justified only where a competitive examination is "impracticable." And the determination of this question is lodged with the administrative body charged with the enforcement of the law.

So tested, the ordinance under review falls. While the terms "office" and "position" are therein used interchangeably, the design of the governing body was to create a position as the term is understood in law. In such an inquiry

nomenclature is of no significance. *Lewis* v. *Jersey City,* 51 *N. J. L.* 240; *Stewart* v. *Freeholders of Hudson,* 61 *Id.* 117; *Hart* v. *City of Newark,* 80 *Id.* 600; *McAvoy* v. *Trenton,* 82 *Id.* 101; *Fredericks* v. *Board of Health,* 82 *Id.* 200; *Ziegler* v. *Burk,* 83 *Id.* 207; *McGrath* v. *Bayonne,* 85 *Id.* 188; *Ross* v. *Freeholders,* 90 *Id.* 522.

And, viewed apart from the provision for a fixed term, the position so provided for automatically falls into the competitive class. It does not come within the exempt class. The incumbent could not claim the category of a "deputy or first assistant" of a "principal executive" officer, "authorized by law to act generally for and in the place of his principal." *Section* 11:22-26 (a), *supra.* The governing body did not delegate to the incumbent authority to act generally for the city clerk in the performance of the duties laid upon him by the charter and statutory enactments; nor did it have the power so to do.

Neither by the charter nor by statute is such authority bestowed upon the incumbent. The charter (sections 27, 41, 42, *Pamph. L.* 1863, *supra*) prescribes the duties of the city clerk and makes no provision for their discharge by another. Thus it is that the governing body could make such delegation of authority only in virtue of an express grant of power by the legislature; and this has been withheld. *Virtue* v. *Civil Service Commission,* 97 *N. J. L.* 80; *Murphy* v. *Freeholders of Hudson County,* 92 *Id.* 244; *Public Service Electric, &c., Co.* v. *Camden,* 118 *Id.* 245. The only specific delegation of power in this regard is limited to the period of "temporary absence, disability or disqualification." *R. S.* 1937, 40:46-13. See *Gavio* v. *Lavallette,* 10 *N. J. Mis. R.* 742.

And it goes without saying that the holder of such a position could not be classified as a "secretary or clerk" of a "department, appointed board or commission authorized by law to appoint a secretary or clerk."

It has long been the settled rule that offices or positions whose terms are "fixed by law" are not within the classified division of the civil service. *McKenzie* v. *Elliott,* 77 *N. J. L.*

43, approved by our court of last resort in *Attorney-General* v. *McGuinness*, 78 *Id*. 346, and *Fagen* v. *Morris*, 83 *Id*. 3; *affirmed*, 84 *Id*. 759. While it is likewise the general rule that the term is also fixed by law where the office or position is created and the term prescribed by municipal ordinance or resolution adopted pursuant to power vested in the governing body by the legislature (*McGrath* v. *Bayonne, supra*), the statutory delegation of power invoked in the instant case (section 40:48-1, *supra*) is not, as respects positions that would be otherwise comprised within the classified civil service, applicable to municipalities which have adopted the provisions of the Civil Service law.

This construction is vital to the principle of civil service in municipal government, *i. e.,* tenure during good behavior; for, if the statutes be read as vesting in the governing body authority to prescribe a fixed term for the individual position, the operation of the Civil Service law will be optional with the governing body, and thus deprived of the attribute of a permanent policy, notwithstanding its acceptance by the electorate. This legislative purpose is not to be implied; it must be expressed in clear and unequivocal language.

In *Stewart* v. *Freeholders of Hudson, supra,* the resolution under review fixed at one year the term of the deputy warden of the county alms house, there found to be a "position;" and, in holding that the resolution was *ultra vires* as in contravention of the act protecting an honorably discharged union soldier, sailor or marine, who served in the Civil War, against removal during good behavior from an office or position whose term was not fixed by law (*Gen. Stat.* 1895, *p.* 3702), Mr. Justice Dixon declared: "We also think that the resolution mentioned goes beyond the authority of the board in its attempt to limit the relator's appointment to one year. The act of March 14th, 1895, defines the tenure by which all such positions are to be held, when the incumbents are persons of the character therein described, and the term is not otherwise fixed by the laws of the state. It not only forbids the removal of such persons except for good cause shown after a fair and impartial trial, and declares

that political reasons shall not constitute good cause, but it affirmatively ordains that they shall hold their positions during good behavior, and so prevents the appointing power from setting any other bound to the duration of the incumbency. Thus every office or position under the government of the state or of any county or city, when occupied by one of these favored citizens, is held either for a term fixed by the law of the state or during the good behavior of the incumbent. This clause of the statute we regard as establishing a legislative policy which cannot be thwarted by the simple device of making appointments for a specified term." See, also, *Newark* v. *Civil Service Commission,* 112 *N. J. L.* 571; *affirmed,* 114 *Id.* 185.

*Third:* As to defendants' claim of laches.

The point is frivolous. This is not a case of inexcusable and prejudicial delay in the assertion of his claim by the claimant of a *de jure* office or position. Compare *Marjon* v. *Altman,* 120 *N. J. L.* 16. It is axiomatic that laches such as is here charged does not infuse vitality into an ordinance void as *ultra vires* the municipality. In this regard, there is an obvious substantive distinction between the usurpation of authority and the irregular exercise of a power bestowed. The state has an interest in confining its municipal agencies to the granted powers; and thus public policy would be disserved by the invocation of the doctrine of laches in such circumstances. In that situation, the principle is not available.

The resolution and the ordinance are accordingly set aside, with costs.