117 N.J. Super. 575 (1971)
285 A.2d 270
JOHN J. O'CONNOR, PLAINTIFF,
v.
CITY OF UNION CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; JAMES E. LAGOMARSINO, DIRECTOR OF DEPARTMENT OF REVENUE AND FINANCE; HARRISON C. HULTMAN, COMPTROLLER AND SUPERVISOR OF ACCOUNTS; AND LIBERO D. MAROTTA, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 6, 1971.
*577 Mr. George J. Kaplan attorney for plaintiff.
Mr. Victor P. Mullica attorney for defendants City of Union City, James E. Lagomarsino and Harrison C. Hultman.
Mr. Richard J. Plaza attorney for defendant Libero D. Marotta.
LARNER, A.J.S.C.
This is an action in lieu of prerogative writs brought by plaintiff as a citizen and taxpayer of the City of Union City challenging the validity of a resolution adopted by the board of commissioners wherein they designated Libero D. Marotta as "Special Counsel to the City of Union City for all matters pertaining to bond sales." The matter came before the court on the return day of an order to show cause why the resolution should not be set aside as contrary to law and upon the application for preliminary restraints pending final hearing.
During the argument on the return date it became apparent that there are two issues to be determined in the litigation: (1) the validity of the resolution and the accompanying appointment of Marotta as special bond counsel, and (2) the reasonableness and propriety of the bill submitted by him in connection with the issuance of school *578 bonds on June 1, 1971. Issue (1) is a legal one which can be determined in a summary manner at this time, as attested to by the stipulation of counsel. Issue (2) is a factual one requiring a plenary hearing.
It is plaintiff's contention that the appointment of Marotta by the board of commissioners in the manner expressed in the resolution creates a "position" which can only be brought into valid existence by the adoption of an ordinance with all its legal formalities and not by a mere resolution. Defendants, to the contrary, assert that the designation of Marotta as bond counsel does not create an "office" or "position" but merely names him as an employee with the result that the resolution suffices for validity.
It is well settled that a municipal "office" or "position," if not expressly provided for by statute, can be created only by ordinance. N.J.S.A. 40:48-1; Jersey City v. Department of Civil Service, 7 N.J. 509, 524 (1951); Handlon v. Belleville, 4 N.J. 99, 108 (1950); Wagner v. Lodi, 56 N.J. Super. 204, 206 (App. Div. 1959); Orange v. Goldberg, 137 N.J.L. 73, 75-76 (Sup. Ct. 1948); Serritella v. Water Commission, Garfield, 128 N.J.L. 259, 263 (Sup. Ct. 1942); Toomey v. McCaffrey, 116 N.J.L. 364, 366 (Sup. Ct. 1936).
The underlying rationale for this requirement is that the creation of a new office or position, involving as it does an additional financial burden for the public, should be preceded by the public notice and deliberation attendant upon the passage of an ordinance. See Kovalycsik v. Garfield, 58 N.J. Super. 229, 234 (App. Div. 1959); Orange v. Goldberg, supra; Davaillon v. Elizabeth, 121 N.J.L. 380, 381 (Sup. Ct. 1938).
Courts in the past have drawn distinctions in definition and consequences between an "office," a "position" and an "employment." Generally, it has been held that an "office" involves employment which is governmental in character and duties which are certain and permanent; that a "position" is analogous to an office in that the duties are also permanent *579 and certain, but differs therefrom in that the duties may be nongovernmental and not established by law; that "employment" differs from both an office and position in that the duties are neither certain, permanent nor governmental. See Wilentz ex rel. Golat v. Stanger, 129 N.J.L. 606, 614-615 (E. & A. 1943); Newark v. Department of Civil Service, 68 N.J. Super. 416, 429 (App. Div. 1961); Kovalycsik v. Garfield, supra 58 N.J. Super. at 236; Board of Chosen Freeholders of Hudson County v. Brenner, 25 N.J. Super. 557, 562-564 (App. Div. 1953); Fredericks v. Board of Health, 82 N.J.L. 200, 201-202 (Sup. Ct. 1912). The cases have concluded that although the creation of an "office" or "position" requires an ordinance, a mere "employment" may be created by resolution.
In this case the governing body by its resolution sought to invest Marotta with the right to represent the municipality in all public bond matters in perpetuity or until revoked by a subsequent governing body, without specifying the term of his incumbency and without specifying the compensation to be paid to him. In effect, it sought to create an appointment which is hybrid in nature and which does not necessarily fit into the cubbyhole designations of "office," "position" or "employment."
On mature analysis, there should be no need for exact classification within the dichotomy dictated by the cited cases since rigid classification is of little usefulness in deciding the issue at bar. See Glasser, "A New Jersey Municipal Law Mystery: What Is a `Public Office,'?" 6 Rutgers L. Rev. 503 (1952). It is clear that the appointment herein names Marotta as the attorney on a perpetual and continual basis to handle all bond matters in the municipality, although the appointment can be modified or repealed by any subsequent resolution of this governing body or any future governing body.
It is the court's opinion, however, that despite the absence of a set term and despite the right of termination, the appointment with its involvement of continuity and exclusivity *580 is of sufficient importance to the community to fall into the category of those matters which require the deliberate process of an ordinance. As noted in Kovalycsik v. Garfield, supra, 58 N.J. Super. at 237: "[T]he trend of the cases makes clear that the policy of the Home Rule Act, effectuated by requiring positions to be created by ordinance, is best served by a strict interpretation of the employee category."
Applying this strict construction policy, it would follow that the nature of this appointment should require for validity the adoption of an ordinance rather than a resolution.
It should be noted, of course, that this conclusion does not detract from the right of a municipality to retain special counsel for a particular piece of litigation or legal work through a letter or resolution or other form without the necessity of adoption of an ordinance. However, where the appointment is not limited to a particular case or a particular matter but purports to retain an individual as counsel in perpetuity for all matters pertaining to bonds, the situation is one which requires the ordinance procedure.
In light of the foregoing, the court will enter judgment in favor of plaintiff declaring the resolution and the appointment of Marotta as bond counsel in general, void and of no effect. However, it is apparent from the proofs that Marotta did perform certain services in connection with a particular bond issue involving the school system of Union City. Retention for such an individual transaction would be perfectly proper sans ordinance. He would, therefore, be entitled to the reasonable value of his services based upon the proofs as to the value of those services to the municipality.
Since the foregoing determination involving the validity of the appointment of defendant as bond counsel, the court held a plenary hearing on the issue of the reasonable value of the legal services rendered by defendant. In passing, it should be noted that Union City is generally represented by its corporation counsel, Cyril J. McCauley, whose tenure in office was sustained by this court in litigation *581 wherein the newly elected group of commissioners sought to appoint Marotta to the position held by McCauley. Lynch and McCauley v. Union City, Dockets L-37629-69 and L-37625-69 (October 5, 1970), aff'd App. Div. Dockets A-310-70 and A-311-70 (November 4, 1971). Having been frustrated in their effort to reward Marotta by the abortive appointment as corporation counsel, the members of the governing body adopted the resolution discussed supra appointing him as "Special Counsel * * * for all matters pertaining to bond sales," thereby setting the scene for shunting the salaried corporation counsel and the within litigation relating to Marotta.
The evidence reveals that on March 4, 1971 the governing body of Union City adopted an ordinance authorizing a bond issue for capital projects for two schools in the district in the amount of $2,100,000. In harmony with established practices and the demands of the financial community, New York bond counsel, Hawkins, Delafield & Wood, was retained to perform the requisite legal services and add its imprimatur on the legality of the bonds as protection for the underwriters and the purchasing public. This firm performed its services and rendered its final approving opinion on July 22, 1971. On August 24, 1971 the firm submitted a voucher to the city in the sum of $3,250 for services rendered, plus disbursements of $16.77, for a total of $3,266.77. Thereafter, on September 1, 1971 Marotta submitted his voucher to the city incorporating the services rendered by the Hawkins firm with the services allegedly rendered by him, and requesting a total of $15,540. By this voucher, Marotta therefore sought a net fee for himself amounting to $12,273.23.
Although the resolution of May 20, 1971 appointing Marotta recites:
WHEREAS, the City of Union City is desirous of engaging an attorney experienced in bonding matters; and
WHEREAS, Libero D. Marotta has the requisite experience to represent the City of Union City in matters pertaining to bond sales * * *,
*582 the fact is that Marotta has had no prior experience in municipal bond matters. The retention in connection with the bond issue was his first introduction to the legal intricacies involved.
Marotta testified that he is a sole practitioner operating an office with one secretarial employee. His services subsequent to his appointment on May 20, 1971 involved in great measure such research as was necessary to educate himself in the area of New Jersey law relating to a bond issue and the statutory requisites and procedures for such a municipal undertaking. In addition, he also reviewed the bond ordinance and the resolution adopted by the board of education. He had several telephone conversations with a member of the Hawkins firm and also with a member of the underwriting firm of Matthews & Wright. He further testified as to some correspondence with New York counsel and of his review of the opinion rendered by that firm. Furthermore, he prepared a nonlitigation certificate and submitted the same to New York counsel.
However, the testimony is clear that he submitted no written opinions or reports, that he never conferred personally with any members of the New York law firm, and that he did not attend the closing which took place in New York. No file or writings of any kind were offered in evidence to support the nature or extent of the services allegedly rendered.
Marotta kept no record of the time expended on this project, although he ventured an estimate of having devoted 60-70 hours in the matter. The court is satisfied that this estimate represents an exaggerated guess, having no relationship to reality.
The court concludes from the evidence and the reasonable inferences therefrom that the time and effort expended by Marotta were minimal and, in many respects, duplicative of the services rendered by New York bond counsel.
Marotta, nevertheless, justifies the reasonableness of his fee on the basis that it is in accordance with established *583 standards of the profession wherein legal fees in connection with municipal bonds are keyed to the amount of monies realized by the municipality from the bond issue. And, it is manifest that this standard was the sole guideline utilized by him in computing the fee, the total charge of $15,540 representing 3/4 of 1% of the total amount of bonds sold.
It is true that the practice upon which Marotta relies has been followed by some municipal attorneys in this State for many years. In fact, several county bar associations that have adopted minimum fee schedules have incorporated fees based on differing percentages of the total amount realized from the bond issue. See 1971 New Jersey Lawyers Diary and Manual 839. If these schedules and practices are applied as the sole test of reasonableness, the charge submitted by Marotta is well within the suggested guidelines.
Despite these self-imposed and self-serving standards, it is the view of this court that the mere existence of such a practice among some of the municipal attorneys should not foreclose a reexamination of its propriety, not only with regard to the particular case before the court, but also with regard to its continued use as a standard of measurement for counsel fees in bond matters. Parenthetically, it should be noted that this practice has been the subject of criticism and consideration by an appropriate committee of the New Jersey Bar Association. See 94 N.J.L.J. 971 (1971). See also Bayou Meto Drainage District v. Chapline, 143 Ark. 446, 220 S.W. 807, 810 (1920).
It is manifest that if the practice of setting fees for legal services in bond matters is pegged to the amount of the bond issues, the fees underwritten by the taxpaying public of the many municipalities of this State involve very substantial sums of money. And, since the subject matter concerns the public and public moneys, greater vigilance by the courts is warranted than in private contractual fee arrangements between attorney and client.
The services of a local attorney in bond matters are the same regardless of the size of the issue. The quantum of the *584 borrowings is not dependent upon the skill and ability of the attorney or the benefit which the attorney produces for the client. This is quite distinguishable from the contingent fee practice in contract or tort cases where the client pays a fee based mainly upon the extent of benefit produced by the attorney's efforts and where the attorney shares in the risk of recovery. It may be contended in theory that the size of the bond issue is correlated with the degree of responsibility undertaken by the attorney. However, in the particular context of municipal bond issues, the major, or perhaps total, responsibility is undertaken by the New York law firm which imprints its seal of approval as the guarantee for the purchasing public. Therefore, as to services rendered by bond counsel in that capacity, there may be some justification in the allowance of fees based in some part on the amount involved in the transaction, although such a criterion should play a small part in the determination of reasonableness together with all other accepted guidelines for setting legal fees. In the case of Marotta, however, it is clear that he did not issue any certificate which could involve him in any future responsibility to the bond purchasers for a legal defect in the bonds or underlying documents, and that the amount of the borrowings has no rational relationship in any way to the value of the services rendered by him as local bond counsel.
It is apparent that the practice adopted by some municipal attorneys in this State of admeasuring fees by the sole criterion of the size of the bond issue foists upon the taxpaying public the payment of exorbitant fees which are based upon an irrelevant and arbitrary standard rather than the normal guidelines for determining the reasonableness of legal fees. Such a practice is improper, legally and ethically, and should be discontinued. In re Bloomer, 37 N.J. Super. 85 (App. Div. 1955); In re Bloomer, 43 N.J. Super. 414 (App. Div. 1957), cert. den. 23 N.J. 667 (1957); Code of Professional Responsibility DR 2-106(A).
*585 Whether a municipal attorney is entitled to a fee for his services in connection with municipal bond matters depends on the nature of his retainer with the municipality. If the salary allotted to him is intended to encompass all legal services, his efforts in correlation with the services of New York bond counsel should produce no additional compensation. If, however, his retention as corporate counsel is limited in nature at a minimal annual salary and not intended to include bond services, his compensation should be measured by the amount of time and effort expended and the value of the service to the municipality and not upon the quantum of the bond issue.
In this case Marotta was not the corporation counsel of the city, so that he is entitled to some compensation. Upon a review of all of the evidence and a consideration of the actual services rendered by him, the value of those services to the community and the time expended in connection therewith, it is crystal clear that the requested fee in excess of $12,000 is outrageous.
It is the court's conclusion that a reasonable fee by way of compensation to Marotta is $1,000, exclusive of the charges of Hawkins, Delafield & Wood.
Judgment will be entered accordingly.