765 A.2d 779

RAYMOND R. ROE AND HARRY D. HANSEN, PLAINTIFFS–APPELLANTS, v. BOROUGH OF UPPER SADDLE RIVER, MAYOR AND COUNCIL OF THE BOROUGH OF UPPER SADDLE RIVER, AND THE BOROUGH OF HILLSDALE, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 9, 2001—Decided February 7, 2001.

Before Judges SKILLMAN, CONLEY and LESEMANN.

*Michael J. Beatrice* argued the cause for appellants.

*Robert T. Regan* argued the cause for respondents.

No brief has been filed on behalf of respondent Borough of Hillsdale.

*Thomas J. Orr,* attorney for amicus curiae New Jersey State Exempt Firemen's Association, Inc. (*John K. Justin,* on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

Plaintiffs appeal a final judgment entered July 8, 1999, dismissing their complaint seeking reinstatement to their abolished municipal positions pursuant to *N.J.S.A.* 40A:14–64 and 65 based upon their status as "tenured exempt firemen." We affirm.

Plaintiff Raymond R. Roe possesses a "Certificate of Exemption" as a result of his service as a firefighter with the Mahwah Fire Department from August 1971 to December 1978. Plaintiff Harry D. Hansen, similarly, possesses a "Certificate of Exemption" as a result of his service as a firefighter with the Ridgefield Park Fire Department from August 1962 to August 1969. *See N.J.S.A.* 40A:14–56, –59. Both plaintiffs, subsequent to obtaining their certificates, were employed by defendant Upper Saddle River; Roe as a fire subcode official and Hansen as a plumbing

subcode official.[1]   Each had occupied their respective positions for more than three consecutive years and, thus, possessed tenure in those positions pursuant to *N.J.S.A.* 40A:14–64.[2]

In January 1998, Upper Saddle River entered into an Interlocal Agreement with Hillsdale, pursuant to the Interlocal Services Act, *N.J.S.A.* 40:8A–1 to –11, for the provision of construction code services through the Hillsdale Construction Code Office.   One of the effects of this governmental action was the abolishment of plaintiffs' positions.[3]   In the ensuing litigation that has generated

---

[1] Plaintiffs' appointment to these positions was pursuant to *N.J.S.A.* 52:27D–126a which provides in part that "the appointing authority of any municipality shall appoint a construction official and any necessary subcode officials to administer and enforce the [Uniform Construction Code Act, *N.J.S.A.* 52:27D–119 to –141]."

[2] *N.J.S.A.* 40A:14–64 provides in pertinent part that:
>    Whenever an exempt fireman holds a ... municipal ... office ..., he shall hold such office during good behavior and shall not be removed unless for good cause after a fair and impartial hearing, provided he has or shall have served in said office for a term of 3 consecutive years....

*N.J.S.A.* 40A:14–60 provides comparable tenure status to exempt fireman certificate holders occupying a state, county, municipal or school board "office, position or employment" for an indeterminate term.   Interestingly, and parenthetically, we note that *N.J.S.A.* 40A:14–60, 61 and 62 refer to an "office, position or employment," whereas *N.J.S.A.* 40A:14–63 refers to any "office or position", *N.J.S.A.* 40A:14–64 refers to an "office not created by the Constitution" and *N.J.S.A.* 40A:14–65 refers to "any office."   These differences have been recognized in *Muccio v. Cronin,* 135 *N.J.Super.* 315, 319, 343 *A.2d* 158 (Law Div.1975).   *See In re Fitzgerald,* 188 *N.J.Super.* 476, 457 *A.2d* 1208 (App.Div.1983) (position of motor vehicle agent is neither an "office position or employment of the State" so that the protections of *N.J.S.A.* 40A:14–60 do not apply.).   Whether the positions occupied by plaintiffs, however, are municipal "offices" encompassed within *N.J.S.A.* 40A:14–65 has not been raised or considered by the parties.   Neither do we.   *See generally, O'Connor v. City of Union City,* 117 *N.J.Super.* 575, 578–79, 285 *A.2d* 270 (Law Div.1971), *appeal dismissed,* 409 *U.S.* 1031, 93 *S.Ct.* 524, 34 *L. Ed.*2d 481 (1972).

[3] We have been advised that recently Upper Saddle River has rescinded the Agreement and reestablished its own construction code office.   We express no view as to any present entitlement plaintiffs might have to their positions but do note that they were advised of the existence of the positions and were offered an opportunity to apply for reinstatement.

this appeal, plaintiffs, as well as amicus, contend the abolition of their positions was violative of the tenure protections accorded them under the Exempt Firemen's Tenure Act, *N.J.S.A.* 40A:14–60 to –65, specifically *N.J.S.A.* 40A:14–65.

Based upon the evidence presented during the nonjury trial, Judge Lawrence D. Smith concluded that Upper Saddle River's actions were entirely motivated by concerns for economy and efficiency and that plaintiffs' loss of their positions was an unfortunate by-product of good faith governmental action. He found no malice or personal animus towards either plaintiff. Most importantly, he found that the governmental actions challenged by plaintiffs were not taken for the purpose of terminating their services. In this respect, the judge concluded:

> [P]laintiffs' positions with the Borough were not abolished and plaintiffs' employment were not terminated for any reasons related to plaintiffs themselves or their performance. Plaintiffs were not terminated by Upper Saddle River based on the thought that their salary could be avoided. They were not terminated for any reasons that focused on them as individuals. In fact, the Town was quite pleased with their services, although there may have been a few minor complaints....

These findings are clearly supported by the record; indeed they are not disputed by plaintiffs. Rather plaintiffs and amicus focus upon *N.J.S.A.* 40A:14–65 which provides:

> *No* department of the State government, nor any board of chosen freeholders of a county, *governing body of a municipality* or board of education *shall abolish,* change the title or reduce the emoluments of *any office held by an exempt fireman having tenure therein,* for economy reasons or otherwise, for the purpose of terminating his services, *except in time of widespread economic depression or mandatory retrenchment,* but in any such case, the termination or reduction shall be made in the same ratio as in the case of other employees.
> [Emphasis added.]

It is the emphasized language upon which plaintiffs and the amicus rely. It is agreed that neither "widespread economic depression" nor "mandatory retrenchment" existed here. They, therefore, read *N.J.S.A.* 40A:14–65 to preclude the abolition of plaintiffs' positions by virtue of the language "[n]o ... governing body of a municipality ... shall abolish ... any office held by an exempt fireman having tenure therein ... except in time of widespread economic depression or· mandatory retrenchment."

This reading of subsection 65, of course, ignores the phrase which immediately precedes the reference to economic depression and which states "for the purpose of terminating his service."

■ Acts such as the Exempt Firemen's Tenure Act, and its counterpart for war veterans, the Veterans' Tenure Act, *N.J.S.A.* 38:16–1 to –6, are designed "to remove governmental employees from the shifting political currents in order to . . . protect those who also give additional service without compensation to their communities." *Smith v. Board of Chosen Freeholders of County of Bergen,* 139 *N.J.Super.* 229, 238, 353 *A.*2d 153 (Law Div.1976), *aff'd,* 146 *N.J.Super.* 45, 368 *A.*2d 964 (App.Div.), *certif. denied,* 74 *N.J.* 266, 377 *A.*2d 671 (1977). It has consistently been recognized, however, that governmental bodies "acting in good faith and in the public interest, ha[ve] the power to abolish . . . offices . . . [This] is too firmly settled to admit of doubt." *Doyle v. Town of Secaucus,* 10 *N.J.Misc.* 334, 335, 159 *A.* 399 (Sup.Ct.1932), *aff'd,* 110 *N.J.L.* 62, 163 *A.* 893 (E. & A.1933). *See Reck v. Board of Comm'rs of N. Bergen,* 110 *N.J.L.* 173, 177, 164 *A.* 468 (E. & A.1933); *Geraghty v. Township of Berkeley Heights,* 259 *N.J.Super.* 350, 357, 613 *A.*2d 497 (Law Div.1990), *aff'd,* 259 *N.J.Super.* 327, 613 *A.*2d 485 (App.Div.1992). *Cf. Miskowitz v. Union County Util. Auth.,* 336 *N.J.Super.* 183, 196, 764 *A.*2d 455 (App.Div.2001).

For as long as the Exempt Firemen's Tenure Act in its various forms has been in effect, the protections accorded thereunder have never been applied to prevent a *bona fide,* good faith governmental action, the coincidental effect of which may be the abolition of a position held by an exempt fireman who otherwise would be protected from termination. That is to say, the long-standing and consistent enforcement of the protections accorded by the various provisions of the Exempt Firemen's Tenure Act has always been in the context of governmental action ostensibly labeled for economy or other good faith basis but which, in fact, has been aimed at removing the exempt fireman or veteran. *See Smith, supra,* 139 *N.J.Super.* at 238–39, 353 *A.*2d 153; *Maxwell v. Board of Comm'rs*

*of City of Wildwood,* 111 *N.J.L.* 181, 186, 168 *A.* 143 (Sup.Ct.1933), *aff'd,* 113 *N.J.L.* 404, 174 *A.* 709 (E. & A.1934).

Nonetheless, focusing upon the previously underlined portions of *N.J.S.A.* 40A:14–65, plaintiffs and amicus posit that when the Exempt Firemen's Tenure Act was enacted in a somewhat different form in 1938 and which for the first time included *N.J.S.A.* 40:47–66,[4] the predecessor to *N.J.S.A.* 40A:14–65, the Legislature

---

[4] *N.J.S.A.* 40:47–66 provided:

No ... office or position to which an exempt fireman has acquired tenure of office as herein provided, shall be abolished on the ground of economy or otherwise and said work, services or duties shall not be transferred to any other employee, department, office or position *so that it results in the termination of the services of said exempt fireman or the reduction of the emoluments therefor except in time of widespread depression or mandatory retrenchment.* ...

The 1911 version of the Act contained three substantive sections. Section 1 provided in pertinent part:

No person ... holding a position or office ... of this State, or the government of any county, city, town, township or other municipality ... who is an exempt fireman ... shall be removed from such position or office except for good cause shown after fair and impartial hearing, but ... shall hold his position or office during good behavior and shall not be removed for political reasons.

Section 2 provided in pertinent part:

Before any such exempt fireman ... shall be dismissed from any position or office held by him in any department of the government of this State ... county, city, town, township or other municipality of this State, charges shall be preferred against him, a copy of which must be served upon him, and a time set for the hearing ... at which such exempt firemen ... shall have the right to be represented by counsel, and to produce witnesses and testimony in his own behalf.

Section 3 provided in pertinent part:

It shall not be lawful for any ... governing body of any municipality in this State, or of any county in this State, or of any department of the State government, *to abolish any position or office held by an exempt fireman ..., or to change the title of any such office or position, or to reduce the emoluments thereof for the purpose of terminating the service of any such exempt fireman.*

[Emphasis added.]

Section 3 prohibited the abolishment of a position occupied by an exempt fireman where such abolishment was "for the purpose of terminating the service" of such fireman. *N.J.S.A.* 40:47–66, applicable to the new status of a

intended to sharply curtail what amicus characterizes as the judicial "gutting of the Exempt Firemen's Tenure Act" which it claims occurred between 1911 and 1938. The Legislature did this, contend plaintiffs and amicus, by way of the language in *N.J.S.A.* 40:47–66 (now *N.J.S.A.* 40A:14–65) that an exempt fireman who has obtained tenure in his or her municipal office pursuant to *N.J.S.A.* 40:47–63 (now *N.J.S.A.* 40A:14–64) may not have his or her job abolished for any reason short of widespread economic depression or mandatory retrenchment. Under this interpretation, abolishment of positions occupied by exempt firemen for reasons of "economy or efficiency," that had been upheld under prior judicial interpretations of the 1911 Act, would not pass muster.

We do not think this was the Legislature's intent when the predecessor to *N.J.S.A.* 40A:14–65 was enacted in 1938. There is no illuminating legislative history to assist us. But the entire thrust of the protections afforded under the original 1911 Exempt Firemen's Tenure Act, as well as the subsequent 1938 enactment and the present 1971 recodification, was directed at an intended removal of an exempt fireman, whether as a direct dismissal or indirectly through the abolishment of a position where the sole purpose is to accomplish the removal of the protected exempt fireman. We are convinced *N.J.S.A.* 40:47–66 was simply a legislative acceptance of the proposition, as expressed for instance in *Maxwell v. Board of Comm'rs of City of Wildwood, supra,* 111 *N.J.L.* 181, 168 *A.* 143, that even if a municipal employer posits economy or other good faith reasons for the abolishment of a tenured exempt fireman's position, it cannot do so if the real object is to remove the individual. We consider the language relied upon by plaintiffs and amicus to have been added by the Legislature to provide for an exception to the prohibited illusory

---

"tenured" exempt fireman, created by *N.J.S.A.* 40:47–64, is comparable but added the language "except in time of widespread depression or mandatory retrenchment."

abolishment where "times of widespread economic depression and mandatory retrenchment" exist.

We recognize that, at first blush, such a reading of the statute might be considered somewhat irrational since it suggests that the Legislature in 1938 condoned bad faith abolishment of protected firemen in "times of widespread economic depression and mandatory retrenchment." At closer look, however, we are convinced there is an acceptable rationale for the "widespread economic depression and mandatory retrenchment" exception. Prior to that time, governmental abolishment of positions held by exempt protected employees had generated a good deal of litigation over whether the governmental action was prompted by a good faith motivation or simply to dispense with a particular otherwise protected employee. Given the severe economic crisis faced by governmental entities in the 1930's, and according such entities the assumption that they will ordinarily not act in bad faith, the Legislature may well have intended to preclude costly and unnecessary litigation over abolishment of positions held by protected employees in times of "mandatory" retrenchment. We do not think that is an unreasonable basis for the addition of the exception in the 1938 Act which otherwise continued the main focus of the various provisions of the Act, that is prohibition against abolishment of a position occupied by a protected fireman where the proffered economic or other good faith rationale was illusory.

We will not assume that the Legislature's intent in 1938 was otherwise in light of the then existing longstanding judicial interpretation given the 1911 Act and the absence of an express legislative disavowal of that interpretation. *Greenfield v. Passaic Valley Sewerage Comm'rs,* 126 *N.J.L.* 171, 176, 17 *A.*2d 489 (Sup.Ct.1941); *Bialkowski v. Borough of Ridgefield,* 118 *N.J.Super.* 354, 358, 287 *A.*2d 479 (Law Div.), *aff'd,* 120 *N.J.Super.* 194, 293 *A.*2d 671 (App.Div.), *certif. denied,* 62 *N.J.* 79, 299 *A.*2d 76 (1972) ("In light of the foregoing decisions it is evident that plaintiff herein could not claim tenure during good behavior under *N.J.S.A.* 40:47–63. The language and context of *N.J.S.A.* 40A:14–

64 do not reveal such a radical departure from the spirit of *N.J.S.A.* 40:47–63 that plaintiff can now claim a different status."). As to the 1971 recodification, it has been recognized that the protection offered to exempt fireman certificate holders under *N.J.S.A.* 40A:14–60 to –65 is substantively the same as that provided under the predecessor 1938 version. *Muccio v. Cronin, supra,* 135 *N.J.Super.* at 320, 343 *A.*2d 158.

■ The construction of *N.J.S.A.* 40A:14–65 proffered by plaintiffs and amicus is, indeed, a radical departure from the historical and longstanding judicial construction given the Exempt Firemen's Tenure Act insofar as governmental actions prompted by good faith reasons such as economy or efficiency. Their construction is not facially evident, nor does it square with the additional 1938 language, "so that it results in the termination of the services of said exempt fireman or the reduction in the emoluments therefor," [5] which precedes the reference to "widespread economic depression and mandatory retrenchment", or the 1971 counterpart phrase "for the purpose of terminating his services." We, moreover, generally will read legislation sensibly rather than literally, particularly where such literalism results in a radical departure from existing precedent without express legislative intent to do so. *Smith v. Board of Chosen Freeholders of Bergen County, supra,* 139 *N.J.Super.* at 237–38, 353 *A.*2d 153.

■ Not only is the construction proffered by plaintiffs and amicus a radical departure from the overall thrust of the various other sections of the Exempt Firemen's Tenure Act, but it would result in a dramatic difference between exempt firemen qualifying for protection under *N.J.S.A.* 40A:14–65 and veterans who are accorded protections under the Veterans' Tenure Act, *N.J.S.A.*

---

[5] The pivotal sentence in *Viviani v. Borough of Bogota,* 336 *N.J.Super.* 578, 765 *A.*2d 1064 (App.Div.2001), simultaneously filed with this opinion and which reaches a contrary conclusion, that "[t]he [1938] act did not adopt the clause 'for the purpose of terminating the service' used in the 1911 act", op. at 584, 765 *A.*2d 1064, fails to subscribe any significance to this language.

38:16–1 to –6. That Act contains no language comparable to the "widespread economic depression and mandatory retrenchment" language relied upon by plaintiffs and amicus in *N.J.S.A.* 40A:14–65. There is no basis in the legislative history of either the Veterans' Tenure Act or the Exempt Firemen's Tenure Act to even hint that the Legislature intended to treat certain exempt firemen more favorably than veterans. Both statutes have judicially been considered "equatable ... [in] form and substance." *Muccio v. Cronin, supra,* 135 *N.J.Super.* at 321, 343 *A.*2d 158. "While there may be some minor variation in arrangement, phraseology and sentence structure between the Veterans' Tenure Act and the Exempt Firemen's Tenure Act, these two statutes are clearly *in pari materia* and must be so construed in order to achieve a singular legislative purpose." *In re Fitzgerald, supra,* 188 *N.J.Super.* at 482, 457 *A.*2d 1208. No provisions of the Veterans' Tenure Act have ever been read to prevent the abolishment of a protected veteran's position where the governmental action is "for reasons of efficiency or economy, in good faith...." *Moresh v. Bd. of Educ. of Bayonne,* 52 *N.J.Super.* 105, 109, 144 *A.*2d 897 (App.Div.1958).

In addition, plaintiffs' and amicus' construction of *N.J.S.A.* 40A:14–65 would give an Upper Saddle River subcode official who is a qualifying exempt fireman greater protection than that given nonexempt subcode officials in Upper Saddle River who do not qualify but who have otherwise obtained tenure.[6] Had the Legislature so intended, surely it would have expressly so provided, as it has in other contexts. *See N.J.S.A.* 43:15A–61b; *N.J.S.A.* 11A:5–4,–5.

---

[6] Upper Saddle River is a noncivil service municipality. Construction subcode officials, therefore, can obtain tenure pursuant to *N.J.S.A.* 52:27D–126b which provides in part:

A construction official or subcode official in a noncivil service municipality shall be appointed for a term of 4 years and shall, upon appointment to a second consecutive term or on or after the commencement of a fifth consecutive year of service ... be granted tenure and shall not be removed from office except for just cause after a fair and impartial hearing.

██ Furthermore, we note that from 1938 to 1971, when the Act was recodified to "eliminat[e] duplication and inconsistency," (Governor William T. Cahill, Conditional Veto of Senate Bill No. 626 (March 8, 1971)), we have found not a single case which has construed the protections afforded under *N.J.S.A.* 40A:14–60 to – 65, insofar as governmental good faith action that results in the incidental abolishment of a protected exempt fireman's position, any differently than under the 1911 Act. Thus, when the Legislature recodified the Act in 1971 using the same or substantially the same terms, we presume that, as in 1938, it adopted the theretofore judicial construction in the absence of legislative expression to the contrary. *E.g., Muccio v. Cronin, supra,* 135 *N.J.Super.* at 324, 343 *A.*2d 158. *See In re Fitzgerald, supra,* 188 *N.J.Super.* at 480, 457 *A.*2d 1208; *Bialkowski v. Borough of Ridgefield, supra,* 118 *N.J.Super.* at 358, 287 *A.*2d 479. Not only did the Legislature in 1971 not provide for a different construction, but the changes that were made further undercut plaintiffs' and amicus' position. The new phrase *"for the purpose* of terminating [the exempt fireman's] service," [7] which immediately precedes the "widespread economic depression and mandatory retrenchment" language, makes even clearer that the protections under *N.J.S.A.* 40A:14–65 arise only in the event of a governmental objective to terminate the protected exempt fireman, even where ostensibly there is asserted a good faith rationale. That is not the case here.

Affirmed.

---

[7] As previously noted, *N.J.S.A.* 40:47–66, the 1938 predecessor to *N.J.S.A.* 40A:14–65, had provided in part, "so that it[, the abolishment of an exempt fireman's position,] *results in* termination of the services" of the protected exempt fireman. (Emphasis added).