790 A.2d 166

DONALD G. VIVIANI, PLAINTIFF–RESPONDENT, v. BOROUGH OF BOGOTA, DEFENDANT–APPELLANT.

Argued January 2, 2002—Decided February 25, 2002.

*Andrew T. Fede* argued the cause for appellant (*Contant, Atkins, Rogers, Fede, Keane & Hille*, attorneys).

*Emil S. Cuccio* argued the cause for respondent (*Cuccio and Cuccio*, attorneys).

*John K. Justin* submitted a letter in lieu of brief on behalf of amicus curiae New Jersey State Exempt Fireman's Association, Inc. (*Thomas J. Orr*, attorney).

*Andrew T. Fede* submitted a letter brief on behalf of amicus curiae New Jersey State League of Municipalities (*Contant, Atkins, Rogers, Fede, Keane & Hille*, attorneys).

PER CURIAM.

█ In a published opinion the Appellate Division concluded that provisions of the Exempt Firemen's Tenure Act, *N.J.S.A.* 40A:14–60 to –65 (Act), precluded the Borough of Bogota from

abolishing plaintiff's position as Assistant Superintendent of the Department of Public Works (DPW) for good faith economic reasons unrelated to plaintiff or the quality of his performance. *Viviani v. Borough of Bogota,* 336 *N.J.Super.* 578, 583, 765 *A.2d* 1064 (2001). A different panel of the Appellate Division has construed the Act differently, concluding that it does not prohibit a public entity subject to its provisions from abolishing a position or office held by an exempt fireman for good faith economic reasons. *Roe v. Borough of Upper Saddle River,* 336 *N.J.Super.* 566, 573–75, 765 *A.2d* 779 (2001). Although we acknowledge that plausible arguments can be advanced to support either interpretation of the Act, we are thoroughly persuaded that the analysis set forth in *Roe* more accurately reflects the underlying legislative purpose. Accordingly, we reverse the judgment of the Appellate Division and remand the matter to the Law Division for further proceedings consistent with that disposition.

We add only these additional observations. Our dissenting colleagues express the concern that the construction of the Act we adopt will invite litigation focused on discerning the true intent of the public entity. *Post* at 457, 790 *A.2d* at 168 (Verniero, J., dissenting); *post* at 459, 790 *A.2d* at 170 (Zazzali, J., dissenting). Although we agree that cases will arise in which the public entity's actual intent in abolishing a position may be contested, we disagree that pretextual reasons for such action will be difficult to identify and refute. The record before us, however, reflects no such issue.

■ It reveals that between 1992, the year plaintiff was appointed Assistant Superintendent, and 1996, the Borough reduced the number of DPW workers from eighteen to nine. That work force reduction was largely attributable to the Borough's 1994 decision to transfer the DPW's trash collection and recycling responsibility to private companies. Moreover, in 1996 the Borough faced a budget shortfall of approximately $300,000 that was attributable in part to excessive expenditures during the prior year as well as an anticipated reduction in state aid of approximately $187,000. The

enactment of an ordinance eliminating plaintiff's position reflected the Borough's determination to reduce unnecessary expenditures in order to reduce the anticipated budget deficit. Accordingly, this record indicates that the Borough abolished the position of DPW Assistant Superintendent for good faith economic reasons, and not for the purpose of terminating plaintiff's services. Although no longer in a supervisory capacity, plaintiff remains a member of the Borough's DPW work force.

Reversed and remanded.

VERNIERO, J., dissenting.

This appeal centers on *N.J.S.A.* 40A:14–65, which protects the holder of an exempt firefighter's certificate (certificate) from a change in job title or reduction in emoluments except in certain circumstances. The Borough of Bogota (Borough) eliminated plaintiff's position in one of its departments, but continued to employ him in a lower-paid position. The Borough's asserted reason for that action was to save money in the face of reductions in State aid. *Viviani v. Borough of Bogota,* 336 *N.J.Super.* 578, 582, 765 *A.*2d 1064 (App.Div.2001).

As a certificate holder, plaintiff claimed before the trial court that his tenure rights had been violated by the change in position and salary. The trial court and the Appellate Division agreed. *Id.* at 583, 765 *A.*2d 1064. I would affirm the judgment of the Appellate Division substantially for the reasons expressed in Judge Lintner's comprehensive and persuasive opinion. *Id.* at 583–92, 765 *A.*2d 1064.

The statute provides:

No department of the State government, nor any board of chosen freeholders of a county, governing body of a municipality or board of education shall abolish, change the title or reduce the emoluments of any office held by an exempt fireman having tenure therein, for economy reasons or otherwise, for the purpose of terminating his services, except in time of a widespread economic depression or mandatory retrenchment, but in any such case, the termination or reduction shall be made in the same ratio as in the case of other employees.

[*N.J.S.A.* 40A:14–65.]

In view of that provision, the panel below concluded that even though the Borough may have acted out of a good-faith desire to reduce spending, the statute required enhanced protection to plaintiff in this setting.

The majority reaches a contrary conclusion based substantially on the rationale articulated in *Roe v. Borough of Upper Saddle River*, 336 *N.J.Super.* 566, 765 *A.*2d 779 (App.Div.2001). Focusing on the phrase "for the purpose of terminating his services," the *Roe* court concluded that the statute's protections apply only when a municipality's objective is to terminate or demote a particular firefighter. *Id.* at 577, 765 *A.*2d 779. In essence, so long as the municipality's workforce restructuring is not done as a pretext for terminating the employee's services, the municipality may so act for simple economic reasons, even when not confronted with "widespread economic depression [or] mandatory retrenchment[.]" *Ibid.*

That rationale reflects a plausible interpretation of the statute. In my view, however, the interpretation advanced by the *Viviani* court is equally persuasive. I resolve this conflict in favor of the firefighter because of my belief that in enacting the statute, the Legislature intended the tenure provision to apply broadly, except in those instances marked by "widespread economic depression or mandatory retrenchment[.]" *N.J.S.A.* 40A:14–65. The *Roe* and *Viviani* courts each discuss the statute's legislative history, which does not need to be repeated here. Suffice it to say, I agree with the *Viviani* court's interpretation of that history in support of its disposition.

As noted, under *Roe*'s approach, the statute would not permit the termination of an individual firefighter in these circumstances, but it would permit the elimination of that employee's position. From the firefighter's perspective, he or she suffers the same injury under either scenario. In short, I do not believe that the Legislature intended a firefighter's job security to be dependent on such technical distinctions. See *Jersey City Chapter of the Prop. Owner's Protective Ass'n v. City Council of Jersey City*, 55

*N.J.* 86, 100, 259 *A*.2d 698 (1969) (observing that "[w]hen all is said and done, the matter of statutory construction will not justly turn on ... technisms ...; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation").

Strict adherence to the *Roe* approach raises another concern. The panel in *Roe* recognized that "even if a municipal employer posits economy or other good faith reasons for the abolishment of a tenured exempt fireman's position, it cannot do so if the real object is to remove the individual." *Roe, supra,* 336 *N.J.Super.* at 573, 765 *A*.2d 779. The problem, however, is that *Roe* provides no mechanism to discern the true intent of a municipality. Arguably, then, costly litigation and discovery would be necessary in every case in which a tenured employee has suffered under the guise of "good faith action that results in the incidental abolishment of a protected exempt fireman's position[.]" *Id.* at 577, 765 *A*.2d 779.

The better approach, as embodied in *Viviani*, is to avoid speculation or litigation in respect of the motives underlying a municipality's conduct. I suggest no bad faith in this case. I simply agree with the *Viviani* court's analysis that looks beyond the manner in which a municipality has characterized or labeled its workforce restructuring and focuses instead on the impact of that action on the tenured firefighter. In other words, the *Viviani* approach eliminates the need to inquire into a municipality's alleged bad faith or other forms of possible mischief. I find that approach to be more consonant with the Legislature's intent than the one articulated in *Roe.*

A firefighter is entitled to a certificate after performing firefighting duties for seven years, provided other criteria are satisfied. *N.J.S.A.* 40A:14-56. In my view, the statute embodies an implied agreement in which volunteer firefighters accept the dangers inherent in that work and give freely of their time and talent in exchange for enhanced job security. As aptly noted by the court below, "[t]he services provided by volunteer firemen benefit the community and are directly related to public safety and

welfare, which is an elementary function of government." *Viviani, supra,* 336 *N.J.Super.* at 590, 765 *A.*2d 1064.

Although laudable, a municipality's objective in reducing expenditures by employing management efficiencies cannot override the statute's protections. Indeed, in the face of governmental downsizing, the language in *N.J.S.A.* 40A:14–65, which prohibits the termination or demotion of a tenured firefighter "for economy reasons or otherwise," takes on particular significance. Consistent with what I perceive to be the Legislature's purpose in enacting the statute, we should uphold a firefighter's tenured status unless the statute's text undisputedly requires otherwise. It does not in this instance. Thus, I would affirm the judgment below.

Justices LONG and ZAZZALI join in this opinion.

ZAZZALI, J., dissenting.

I join in Justice Verniero's dissent. I write separately to address the following concerns: there is little if any difference between abolishing a position and terminating services; even if there is a distinction, the Court today establishes an almost insurmountable obstacle for firefighters; and the legislative intent favors plaintiff.

The Borough of Bogota (Borough) distinguishes between termination of a firefighter when the governing body is "abolishing the position," which the Borough claims is permissible, and the discharge of a firefighter for the purpose of "terminat[ing] his services," which the Borough admits is impermissible. In my opinion, this is a distinction without a difference. As Judge Harris observed at the conclusion of trial, one can "put whatever gloss you want upon what Bogota did. But its purpose was to terminate this exempt fireman's services." In that respect, I would defer to the trial court's finding and its "feel of the case."

Although abolition of the position and termination of services may not be the same literally, in practice they are virtually

identical. When a governing body abolishes a position, it almost invariably terminates services. To call it something else does not make the termination of services less real to the terminated employee.

Even assuming that there is a difference between abolishing a position and terminating services, that does not end the inquiry. It is only the starting point, for this decision will have substantial precedential consequences. I agree with my dissenting colleague that this holding may lead to mischief. Mischief will beget manipulation if we permit governing bodies to legitimize the termination of a firefighter by invoking either "economy reasons" or "other good faith reasons"—a catch-all that opens the door to abuse. In essence, we have facilitated the ability of municipalities to terminate services pretextually under the guise of the "abolition of a position."

It is no answer that pretextual discharges can be tested in the crucible of trial. Apart from its costs, the more unsettling problem is that litigation may become a futile exercise that will be unsuccessful in all but a few cases. I recognize that courts are capable of determining whether bad faith exists. See *Sons of Thunder, Inc. v. Borden, Inc.*, 148 *N.J.* 396, 419, 690 *A.*2d 575 (1997). But before a court finds it, a plaintiff has to prove it. Although I do not doubt the good faith of the Borough in this case, I am concerned about the potential for future misuse by governing bodies. All a municipality need do is pass an ordinance invoking "economy reasons" or other "good faith" reasons in a "Whereas" clause, and the ordinance almost certainly will pass muster. General welfare ordinances will enable municipalities to transform rationalizations into reasons. Any reason, with citation to a ledger or a lawyer, will suffice. Any one of a myriad of concerns, real or feigned, that face a municipality every day may provide an excuse. Although the field abounds with "how-to" manuals, it takes little imagination to manufacture a need.

If and when litigation ensues, the municipality need only invoke the talisman of "good faith." The plaintiff's claim is then likely to

evanesce, for the plaintiff faces the almost insurmountable task of demonstrating otherwise. Direct evidence of bad faith is seldom discovered before or during litigation; circumstantial evidence of bad faith sufficient to overcome the employer's portrayal of good faith is almost as rare. These observations are not speculative or conclusory. *Lullo v. International Ass'n of Fire Fighters,* 55 *N.J.* 409, 424, 262 *A.*2d 681 (1970), *Galloway Township Board of Education v. Galloway Township Ass'n of Educational Secretaries,* 78 *N.J.* 1, 9, 393 *A.*2d 207 (1978), and *In re Bridgewater Township,* 95 *N.J.* 235, 240–41, 471 *A.*2d 1 (1984), counsel our courts to turn to the federal labor law experience for guidance. When considering the "actual motive" for a discharge, "it is seldom that direct evidence will be available that is not also self-serving." *Shattuck Denn Mining Corp. v. N.L.R.B.,* 362 *F.*2d 466, 470 (9th Cir.1966). Further, "direct evidence is seldom attainable when seeking to probe an employer's mind to determine the motivating cause of his actions." *N.L.R.B. v. Bird Mach. Co.,* 161 *F.*2d 589, 592 (1st Cir.1947). It follows then, as the National Labor Relations Board observed in a seminal decision on motivation, that "such matters of motive [ ] cannot in the nature of things be proved other than circumstantially." *Universal Camera Corp.,* 79 *N.L.R.B.* 379, 386 n. 2 (1948) (citing *Bird Mach. Co., supra,* 161 *F.*2d at 592), *vacated on o.g.,* 340 *U.S.* 474, 71 *S.Ct.* 456, 95 *L.Ed.* 456 (1951). The exempt firefighter will overcome those difficult odds only in the unique situation when he or she finds the elusive clue, either a memorandum that incriminates or a supervisor who inculpates. Experience demonstrates that disproving good faith or rebutting a pretext, particularly one mapped out on paper, is an herculean task, and in my view an unreasonable one.

Beyond this is the spectre of a "costly" litigation and discovery process. *Ante* at 457, 790 *A.*2d at 168 (Verniero, J., dissenting). The employee and his or her counsel cannot compete effectively against the considerable resources of governing bodies and their liability carriers. Both the difficulty in proofs and the prohibitive costs create a playing field that is more than uneven.

Finally, the trial court and the Appellate Division correctly discerned the legislative intent. I believe that the Legislature intended to allow a governing body to abolish an exempt firefighter's position in the case of wide-spread economic depression or mandatory retrenchment. However, I do not believe that the Legislature intended to allow abolition of a position for reasons of "economy" alone. *N.J.S.A.* 40A:14–65. The lower courts' views represent a fair balance of the conflicting interests. I recognize that this appeal presents a difficult and close legal question. The courts in *Viviani v. Borough of Bogota,* 336 *N.J.Super.* 578, 765 *A.*2d 1064 (App.Div.2001), and *Roe v. Borough of Upper Saddle River,* 336 *N.J.Super.* 566, 765 *A.*2d 779 (App.Div.2001), presented principled positions for their competing views. However, the balance tilts in favor of plaintiff, given the legislative purpose of the statute to provide "enhanced job security" to "firefighters [who] accept the dangers inherent in that work and give freely of their time and talent[.]" *Ante* at 457, 790 *A.*2d at 169 (Verniero, J., dissenting). Because of that legislative purpose, and because firefighters take risks on a daily basis and do so without pay, any doubt in this matter should be resolved in favor of the firefighter.

In my view, this dispute presents an apt vehicle for the Legislature to address and remedy the majority's disposition.

For *reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, and LaVECCHIA—4.

For *affirmance*—Justices LONG, VERNIERO, and ZAZZALI—3.