**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2461-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAVON COOK, a/k/a JAVON S.
COOK,

     Defendant-Appellant.

_____

Argued March 4, 2024 – Decided May 15, 2024

Before Judges Gilson and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 22-06-1818.

Tamar Yael Lerer, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Tamar Yael Lerer, of counsel and on the briefs).

Kevin Jay Hein, Assistant Prosecutor, argued the cause for respondent (Grace C. MacAulay, Camden County Prosecutor, attorney; Megan Elizabeth Clancy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A police officer stopped and frisked defendant Javon Cook while he was walking on a street in Camden. Following the denial of his motion to suppress all evidence seized from him during the search, including a handgun, defendant pled guilty to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1). He was sentenced to five years in prison with forty-two months of parole ineligibility.

Defendant appeals from the order denying his motion to suppress. Because the State failed to establish that the officer who stopped and frisked defendant had a reasonable articulable suspicion that defendant possessed a weapon, we reverse and vacate defendant's conviction.[1]

I.

We discern the facts from the record on the motion to suppress. Only one witness testified at the hearing: Camden County Police Officer Patrick N. Vandeyar. Neither the State nor defendant offered any documents or exhibits

---

[1] On the same day that defendant pled guilty to possession of the handgun, he pled guilty to two other crimes: third-degree burglary, N.J.S.A. 2C:18-2(a)(1), and third-degree possession of fentanyl, N.J.S.A. 2C:35-10(a)(1). Each of those charges had been alleged in separate indictments. Defendant has not appealed from those convictions or the related sentences. Accordingly, our ruling does not affect defendant's convictions for burglary or possession of fentanyl or the sentences for those convictions.

A-2461-22

into evidence. Defendant did, however, attach to his motion brief an unofficial transcript of a 911 call.

Vandeyar testified that on April 17, 2022, he was on patrol with another officer. At approximately 5:45 p.m., he received a "call for service" from a dispatcher. He explained that the call was based on a 911 call and the dispatcher "stated that there [were] two males dressed in all black—black males dressed in all black and two females, and one of them had a firearm." The dispatcher directed Vandeyar to go to 1123 Lowell Street to investigate.

Vandeyar and his partner then went "on foot" to Lowell Street. When he arrived, Vandeyar observed "two males matching the description and two females walking towards the intersection of Mount Ephraim and Lowell." In that regard, Vandeyar testified:

> Q: Were there any physical characteristics of the individuals that you took note of?
>
> A: Yes. The clothing description that was given out.
>
> Q: And what was that clothing description?
>
> A: Black males dressed in all black.

Vandeyar went on to explain, "I believed at that time that the shorter male was armed and dangerous. [I] [s]aw him blading his body and trying to conceal himself." Therefore, the officer stopped the shorter man, told him to put his

hands up, and patted him down for weapons. While performing the frisk, Vandeyar felt a heavy object and removed a handgun from the man's "right pocket." That shorter man, who was later identified as defendant, was placed under arrest. In response to a question from the court, Vandeyar clarified that he did not frisk the taller man.

The State did not introduce the 911 call into evidence. As noted, defendant attached a transcript of the 911 call to his brief.[2] In the transcript, the 911 caller never mentioned the race of any person he was calling about. Instead, the caller, who identified himself by name, reported:

> [Caller]: yea, they out here quarreling and all. [O]ne went back to get a to try to get a he gotta get him a pistol or something. [A]nd they arguing with these, two little, girls.
>
> [Dispatcher]: and they . . . who . . . one of the kids has a pistol?
>
> [Caller]: well—one had a pistol on him. I think the other one is trying to get him to get him a pistol. And they quarreling with uh . . . with two, little girls. Two—

---

[2] The State attached to its appellate brief a CD with a copy of what it represents is the audio recording of the 911 call. At argument before us, the State acknowledged that the audio recording was never played at the suppression hearing. Because the audio recording was not submitted to the trial court, it is not part of the record, and we will not consider it. See Davis v. Devereux Found., 209 N.J. 269, 296 n.8 (2012) (citing R. 2:5-4) (explaining that the Supreme Court "has long held" that "appellate review is limited to the record developed before the trial court").

A-2461-22

two girls and two guy—and three guys. All dressed in black.

[Dispatcher]: and they are all juveniles?

[Caller]: yea. I don't want them to shoot up my house and shoot up my car!

In response to a follow-up question: "Two males and two females?" The caller stated: "[N]o. Two, females and about three . . . three guys involved." The caller also stated that the taller male had the gun.

On January 13, 2023, the trial court issued an order denying defendant's motion to suppress. That same day, the court placed the reasons for its decision on the record. The court found that "for the most part," the facts were "undisputed." The court explained that it was relying on the transcript of the 911 call and the testimony provided by Vandeyar, which the court found to be credible. The court then found that Vandeyar had reasonable suspicion to conduct an investigatory stop of defendant "based on the identified 911 caller who indicated the location of the incident, 1123 Lowell, and the description of the individuals, two to three males, all in black, with two females, and that one male had a gun, which the other one wanted to take." The trial court also found:

> Also[,] Vandeyar had a reasonable and particularized suspicion of criminal activity due to finding the defendant with the description given by the

identified caller and then when defendant sees law enforcement he immediately tries to conceal himself.

The [c]ourt finds the officer had the requisite reasonable suspicion to conduct an investigatory stop of the defendant.

The trial court also found that Vandeyar had reasonable articulable suspicion to conduct a frisk for weapons. The trial court explained that the finding regarding the frisk "flowed directly from the same reasons for the investigatory stop."

Thereafter, defendant entered a guilty plea reserving his right to challenge the denial of his motion to suppress. Defendant now appeals from the order denying his motion to suppress and, in accordance with his rights, he appeals his conviction for unlawful possession of a handgun.

## II.

On appeal, defendant presents two related arguments for our consideration. He articulates those arguments as follows:

THE OFFICERS' STOP AND FRISK OF DEFENDANT BASED ON A VAGUE TIP WAS ILLEGAL.

A. Defendant was unlawfully stopped.

B. Defendant was unlawfully frisked.

6

An appellate court's review of the denial of a motion to suppress physical evidence following an evidentiary hearing is limited. Factual findings made by the trial court will not be disturbed if they are supported by sufficient credible evidence in the record. State v. Ahmad, 246 N.J. 592, 609 (2021) (citing State v. Elders, 192 N.J. 224, 243 (2007)); State v. Baker, 478 N.J. Super. 116, 125 (App. Div. 2024). In contrast, a trial court's legal conclusions and "the consequences that flow from established facts" are reviewed de novo. State v. Hubbard, 222 N.J. 249, 263 (2015).

The United States Constitution and the New Jersey Constitution protect individuals from "'"unreasonable searches and seizures"'" by government officials." State v. Hagans, 233 N.J. 30, 38 (2018) (quoting State v. Watts, 223 N.J. 503, 513 (2015)). A warrantless search is presumptively unreasonable. Ibid. To overcome that presumption, "the State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure[] falls within one of the few well-delineated exceptions to the warrant requirement.'" Elders, 192 N.J. at 246 (quoting State v. Pineiro, 181 N.J. 13, 19 (2004)).

The exceptions at issue in this case are an investigatory stop and a protective frisk. An investigatory stop "involves a relatively brief detention by police during which a person's movement is restricted." State v. Nyema, 249

N.J. 509, 527 (2022) (citing State v. Rosario, 229 N.J. 263, 272 (2017)). An investigatory stop does not offend the federal or state constitutions "if it is based on 'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity." Ibid. (quoting State v. Rodriguez, 172 N.J. 117, 126 (2002) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968))).

"Determining whether reasonable and articulable suspicion exists for an investigatory stop is a highly fact-intensive inquiry." Id. at 528. Courts must evaluate "the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions." Ibid. (quoting State v. Privott, 203 N.J. 16, 25-26 (2010) (quoting State v. Davis, 104 N.J. 490, 504 (1986))).

The New Jersey Supreme Court has made clear that a description of the race and gender of a criminal suspect, without more, is insufficient information to effectuate an investigatory stop. See id. at 533-34; see also State v. Caldwell, 158 N.J. 452, 454-55, 460 (1999) (invalidating an investigatory stop based on a tip from an informant who told police that there was a black man standing in front of a building). The Court has explained that when the police act on

information provided by a 911 caller or an informant, the description must provide information beyond the suspect's race and gender, such as the suspect's approximate height, weight, age, clothing worn, "or any other identifying feature that would differentiate the two Black male suspects from any other Black men in New Jersey." Nyema, 249 N.J. at 531. In that regard, the Court has explained that "vague" descriptions of race and gender are "'descriptive of nothing.'" Ibid. (quoting Caldwell, 158 N.J. at 468 (Handler, J., concurring)).

The New Jersey Supreme Court has also made clear that "nervous behavior" by a suspect does not, by itself, give rise to reasonable articulable suspicion. Id. at 533. The Court has explained that ambiguous behavior by a suspect, which is "subject to many different interpretations," cannot be the basis for reasonable suspicion. Id. at 534. In that regard, the Court has stated that "non-specific and non-individualized factors . . . do not add up to a totality of circumstances analysis upon which reasonable suspicion can be found." Id. at 534-35.

Applying the well-established law to the facts in this case, we conclude that the State failed to establish that Vandeyar had reasonable articulable suspicion to stop defendant. Initially, we point out that the State relied on the description given by the 911 caller. Indeed, the State emphasized that Vandeyar

9

was relying on that description to support his articulable suspicion to stop defendant. The State, however, failed to introduce the 911 call into evidence at the hearing. The State never even offered the transcript or a recording of the call into evidence. Instead, it was defendant who attached an uncertified and unverified transcript of the 911 call to his motion brief. That failure of proofs by the State is sufficient to reverse the trial court's denial of the motion.

The problem with the State's proofs at the hearing, however, is compounded by Vandeyar's testimony. He testified that he was told to look for two black men, wearing all black clothing, with two women. The 911 caller, however, never described the race of the men or women. Moreover, just as in Nyema, the police officer in this matter only had a non-specific description of the suspects' race and gender. Id. at 531. Vandeyar was not told the age of the suspects. Indeed, the caller described the suspects as juveniles. At the time of his arrest, defendant was not a juvenile; he was twenty-five years of age.

Moreover, in the totality of the circumstances of this case, a description that the suspects were wearing "all black" did not make the description sufficiently particularized. The officer never testified that the men were wearing all black. He just vaguely testified that the men fit the clothing description but

10

then, when asked what the clothing description was, replied: "Black males dressed in all black."

The State also relied on the officer's description of defendant's activity of "blading." At the hearing, Vandeyar described the blading as defendant turning sideways so as to block the officer's view while moving behind the taller man. The officer also demonstrated defendant's movements for the trial court. That testimony, however, is at best an ambiguous indicator of activity. The New Jersey Supreme Court has stated that individuals may not want to have encounters with the police and that "seemingly furtive movements, without more," do not support a reasonable articulable suspicion of criminal activity. Id. at 530-31. In that regard, the Court has explained:

> Thus, as with race and sex, a suspect's conduct can be a factor, but when the conduct in question is an ambiguous indicator of involvement in criminal activity and subject to many different interpretations, that conduct cannot alone form the basis for reasonable suspicion.
>
> . . . .
>
> . . . . "Zero plus zero will always equal zero. To conclude otherwise is to lend significance to 'circumstances [which] describe a very large category of presumably innocent travelers' and subject them to 'virtually random seizures.'"

> [Id. at 534-35 (quoting State v. Morgan, 539 N.W.2d 887, 897 (1995) (Abrahamson, J., dissenting) (alteration in original) (quoting Reid v. Georgia, 448 U.S. 438, 441 (1980))).]

For the same reasons, Vandeyar did not have reasonable articulable suspicion to conduct a frisk of defendant. Like an investigatory stop, a frisk must be based on a reasonable articulable suspicion that the suspect is armed. Privott, 203 N.J. at 29-30 (explaining that police may conduct "a limited pat-down for weapons where a reasonably prudent officer would be justified in the belief, based on 'specific and articulable facts[,]' . . . that the person is armed and dangerous" (alteration in original) (quoting Terry, 392 U.S. at 21)). When Vandeyar arrived at the scene, he only had a non-specific description directing him to look for two black males, dressed in all black, with two females. Vandeyar testified that the only observation he made of defendant before seizing him was that defendant bladed himself behind his taller companion. That description of blading does not give rise to a reasonable articulable suspicion that defendant was armed. Instead, it was an ambiguous indicator that defendant did not want to be seen by or interact with the approaching police officers. Vandeyar did not go up to defendant to make a field inquiry. Instead, he immediately seized him by ordering defendant to put his hands up and then immediately frisked defendant. Considering that undisputed testimony and the

12

totality of the circumstances, we conclude that those facts do not give rise to a reasonable articulable suspicion that defendant was armed.

We also reject the State's argument that Vandeyar's years of experience, coupled with the observation of the blading, amounted to an objective reasonable and articulable suspicion that defendant was armed. Like the officer in Nyema, Vandeyar was acting on a hunch. 249 N.J. at 535.

In short, the totality of the information possessed by Vandeyar did not amount to an objectively reasonable and articulable suspicion. Consequently, the motion to suppress should have been granted. We, therefore, vacate defendant's guilty plea to unlawful possession of a weapon, and we remand for further proceedings.

Reversed, vacated, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2461-22